**RECON EXPLORATION, INC. and Recon Air, Inc., Appellants,**

**v.**

**Edward L. HODGES and Kenneth W. Montgomery, Appellees.**

**No. 05–90–00627–CV.**

Court of Appeals of Texas, Dallas.

Oct. 10, 1990.

---

Robert E. Sheeder, Dallas, for appellants.

Stephen C. Porter, Dallas, for appellees.

Before HOWELL, BAKER and LAGARDE, JJ.

## OPINION

BAKER, Justice.

Recon Exploration, Inc. and Recon Air, Inc. appeal from the trial court's denial of their request for a temporary injunction. Recon sued to enforce a secrecy and noncompete agreement against Edward L. Hodges and Kenneth W. Montgomery. Recon contends that the trial court abused its discretion in (1) denying Recon's request for a temporary injunction and (2) reaching certain findings of fact and conclusions of law. We affirm the trial court's order.

## THE FACTS

### 1. Undisputed Evidence

a. The Dispute Between the Parties

Recon engages in exploration for petroleum reserves throughout the world. It uses a process known as microwave spectrometry to detect seepages of hydrocarbon gas. Recon employed Hodges as a "microwave spectrometer operator" and Montgomery as a helicopter pilot. Recon required each to execute a secrecy and noncompete agreement. After June 15, 1989, Hodges and Montgomery formed a partnership to perform hydrocarbon gas surveys using airborne microwave spectroscopy. Amoco Production Company, a Recon customer, contracted for their services. This suit resulted.

### b. The Secrecy and Noncompete Agreements

Hodges began working for Recon in 1983 as a helicopter mechanic. He signed a confidentiality agreement shortly after starting work.[1] After Recon trained him to use its equipment, Hodges signed a second secrecy and noncompete agreement as a condition of continued employment. He received a ten percent raise the month following his execution of the agreement, although his duties did not change. Facing business reversals, Recon terminated Hodges as a full-time employee on June 15, 1989. He continued to work for Recon part time.

Recon hired Montgomery as a helicopter pilot in 1982. He left Recon in 1984 but continued to fly surveys for Recon as a charter pilot. He returned to Recon as a full-time employee in 1986. As a condition of full-time employment, Recon required him to sign a secrecy and noncompete agreement. Recon terminated Montgomery at the same time as Hodges. Montgomery also continued to work part time.

The secrecy and noncompete agreements contain the following provision:

> Employee will not for a period of ten (10) years from the termination of employment pursuant to this Agreement, directly or indirectly, own, manage, operate, control, be employed by or participate in the ownership, management, operation or control of, or be connected in any manner with any business of the type and character engaged in and competitive with that conducted by EMPLOYER at the time of such termination.

The agreements do not contain a geographic limitation.

### 2. Conflicting Evidence

### a. Recon's Equipment and Procedures

At the temporary injunction hearing, Recon introduced evidence that its business interest in its equipment and procedures is entitled to protection. Recon began using microwave spectroscopy technology in 1975. It spent over a million dollars in research and development of its equipment and procedures. The process uses helicopter-mounted marine radar equipment. Hydrocarbon gas appears as a cloud or "ghost" on the radar screen. The radar operator identifies and notes the position of hydrocarbon gas from the images on the screen. The operator plots the information on maps. A geophysicist then reviews the maps to determine the likelihood of oil reserves at the locations shown. Recon's process is unique because it detects methane gas. Recon treats its equipment and procedures as trade secrets.

Hodges and Montgomery responded with evidence that Recon's interest is not entitled to protection. Microwave spectroscopy technology has existed since the end of World War II.[2] Hodges and Montgomery bought the same radar unit on the open market. Montgomery used plans provided by the helicopter manufacturer to mount the equipment on Recon's helicopter. Several companies use microwave spectroscopy to detect hydrocarbon gas. Articles about the use of microwave spectroscopy to detect hydrocarbon gas seepages have appeared in several trade journals. A dispute exists within the petroleum industry as to whether microwave spectroscopy can detect methane gas. Neither Hodges nor Montgomery determined whether images on the radar screen were methane gas or some other hydrocarbon gas. Analysis of the data required a trained geophysicist.

### b. Hodges and Montgomery's Training

Recon introduced evidence that both Hodges and Montgomery received specialized and unique training. Proficient use of the equipment required many months of intensive training. In response, Hodges and Montgomery elicited testimony about their training and duties. Hodges operated the radar equipment, identified the images he saw on the screen, and plotted the information onto maps. His training took about forty hours. A person with no technical

---

1. The enforcement of this initial agreement is not in issue.

2. The trial court in its findings of fact and conclusions of law found the technology to have been common knowledge in the oil and gas industry for approximately 20 years.

background can master Recon's equipment and procedures in about two weeks. Montgomery piloted the helicopter. He received his flight training in the Army and did not get any additional training from Recon. He occasionally helped Hodges by drawing lines, coloring or shading maps, and trimming the edges of maps.

### c. Recon's Loss of Goodwill and Clientele

Recon's evidence showed that it had a significant business relationship with Amoco. After the end of 1989, Recon got no further business from Amoco. Hodges and Montgomery's contract with Amoco provided for $6,500 a day in fees. At the time of the hearing, the partnership had received $86,500 on the contract.

### THE ISSUE

◼ The only issue before the trial court in a temporary injunction hearing is whether the applicant is entitled to preservation of the status quo of the subject matter of the suit pending trial on the merits. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex.1978); *Bethke v. Polyco, Inc.*, 730 S.W.2d 431, 434 (Tex.App.—Dallas 1987, no writ).

### THE STANDARD OF REVIEW

◼ Appellate review of the grant or denial of a temporary injunction is strictly limited to determining whether there has been a clear abuse of discretion by the trial court in granting or denying the interlocutory order. *Davis*, 571 S.W.2d at 862; *Bethke*, 730 S.W.2d at 434. The appellate court may not substitute its judgment for that of the trial court. *Davis*, 571 S.W.2d at 862; *Ballenger v. Ballenger*, 694 S.W.2d 72, 75 (Tex.App.—Corpus Christi 1985, no writ). An abuse of discretion does not exist where the trial court bases its decision on conflicting evidence. *Zmotony v. Phillips*, 529 S.W.2d 760, 762 (Tex.1975).

### DISPOSITION OF RECON'S ARGUMENTS

#### 1. Injunctive Relief
#### a. At Common Law

◼ In its first two points, Recon contends the trial court abused its discretion

because Recon is entitled to preservation of the status quo pending a full trial on the merits. Recon also asserts that the appropriation of its business will result in continued interim injury to Recon. To secure a temporary injunction at common law, a party must plead and prove a probable right to recovery and probable irreparable injury if the court denies temporary equitable relief. *Ballenger*, 694 S.W.2d at 76. Injunctive relief will not be granted unless the applicant also shows that it has no adequate remedy at law for interim damages which may result while the suit is pending. *Ballenger*, 694 S.W.2d at 76. The test for determining if an existing remedy is adequate is whether the remedy is as complete, practical, and efficient to the ends of justice and its prompt administration as is equitable relief. *Brazos River Conservation & Reclamation Dist. v. Allen*, 141 Tex. 208, 171 S.W.2d 842, 846 (1943). No adequate remedy at law exists if damages are incapable of calculation or if a defendant is incapable of responding in damages. *Bank of the Southwest N.A., Brownsville v. Harlingen Nat'l Bank*, 662 S.W.2d 113, 116 (Tex.App.—Corpus Christi 1983, no writ).

◼ Although an applicant for a temporary injunction need not prove that it will win on the merits, it has the burden of establishing a probable right to final recovery and a probable interim injury. *See Keystone Life Ins. Co. v. Marketing Management, Inc.*, 687 S.W.2d 89, 92 (Tex. App.—Dallas 1985, no writ). The common law clothes the trial court with broad discretion in determining whether an applicant has met its burden. *See Executive Tele–Communication Sys., Inc. v. Buchbaum*, 669 S.W.2d 400, 403 (Tex.App.—Dallas 1984, no writ).

◼ Recon argues that it showed a probable right of recovery in two respects. First, it argues that the evidence showed that Recon's equipment and procedures were trade secrets entitled to protection. Second, Recon maintains that it showed

that the training and knowledge gained by Hodges and Montgomery were of such a specialized nature as to require protection. Recon also asserts that it proved probable interim injury. It contends that the Amoco contract evidence showed that the injury suffered by Recon was such that it had no adequate remedy at law and that the interim harm to Recon was irreparable. The record reflects that the evidence conflicts on these points. Hodges and Montgomery adduced evidence that the equipment and procedures are well known in the trade. They elicited testimony that a person could use the equipment and perform the procedures after one or two weeks of instruction. They showed that no particular scientific training is necessary. Also, the evidence established that trained geophysicists interpreted the data compiled by Hodges and Montgomery. Finally, there is evidence that Recon's interim damages can be measured and readily calculated.

■ Abuse of discretion does not exist if the trial court heard conflicting evidence and evidence appears in the record which reasonably supports the trial court's decision. *Seaborg Jackson Partners v. Beverly Hills Sav.*, 753 S.W.2d 242, 245 (Tex. App.—Dallas 1988, no writ). We hold that the trial court did not clearly abuse its discretion in denying the injunction on common-law equitable grounds. We overrule points of error one and two.

#### b. Statutory

■ In its third point of error, Recon argues that injunctive relief is appropriate because the secrecy and noncompete agreements meet the requirements of a statute. *See Mortgagebanc & Trust, Inc. v. State,* 718 S.W.2d 865, 869 (Tex.App.—Austin 1986, no writ). If an applicant relies on a statute which defines the requirements for injunctive relief, then the express statutory language supersedes common-law requirements. *See Texas Farm Bureau Cotton Ass'n v. Stovall,* 113 Tex. 273, 253 S.W. 1101, 1108 (1923); *Rio Grande Oil Co. v. State,* 539 S.W.2d 917, 921 (Tex.Civ.App.— Houston [1st Dist.] 1976, writ ref'd n.r.e.).

■ Recon contends that the agreements are enforceable under the provisions of section 15.50(1) and (2) of the Texas Business and Commerce Code. Section 15.-50 provides that a covenant not to compete is enforceable if it:

(1) is ancillary to an otherwise enforceable agreement but, if the covenant not to compete is executed on a date other than the date on which the underlying agreement is executed, such covenant must be supported by independent valuable consideration; and

(2) contains reasonable limitations as to time, geographical area, and scope of activity to be restrained that do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

TEX.BUS. & COM.CODE ANN. § 15.50 (Vernon Supp.1990).

Recon also asserts that even if the agreements fail to meet the subdivision (2) criteria, section 15.51 requires reformation of the agreements as necessary to bring them into compliance. Subdivision (c) of section 15.51 reads in part as follows:

(c) If the covenant meets the criteria specified by Subdivision (1) of Section 15.50 of this code but does not meet the criteria specified by Subdivision (2) of Section 15.50, the court, at the request of the promisee, shall reform the covenant to the extent necessary to cause the covenant to meet the criteria specified by Subdivision (2) of Section 15.50 and enforce the covenant as reformed....

TEX.BUS. & COM.CODE ANN. § 15.51(c) (Vernon Supp.1990).

Arguing that the agreements are therefore enforceable either as written or as reformed, Recon maintains that section 15.-51(a) authorizes injunctive relief:

(a) Except as provided in Subsection (c) of this section, a court may award the promisee under a covenant not to compete damages, injunctive relief, or both damages and injunctive relief for a breach by the promisor of the covenant.

TEX.BUS. & COM.CODE ANN. § 15.51(a) (Vernon Supp.1990).

Recon submits that it established without dispute the section 15.50 requirements for enforcing the agreements. However, the record contains conflicting evidence. As to subdivision (1), the evidence shows that Hodges executed his secrecy and noncompete agreement more than a year after his initial employment. Recon and Hodges disagreed about whether Hodges's raise was the consideration for his execution of the agreement. Montgomery had performed the same duties as a charter pilot for Recon before he signed the agreement. The only evidence of consideration for Montgomery's agreement was the change in his employee status. Hodges and Montgomery disputed Recon's claim that they were employees at all relevant times. The trial court had before it conflicting evidence as to whether the agreements were ancillary or supported by independent consideration.

Nor is it clear that Recon established the subdivision (2) requirements without dispute. The ten-year term, the absence of any geographical limitation, and the scope of prohibited activity as "any business of the type and character engaged in and competitive with" Recon all presented questions of reasonableness. The trial court heard conflicting evidence about the degree to which Recon had a protectable business interest. The record reasonably supports the trial court's conclusion that Recon did not show that upon trial of the merits it would probably (1) prevail on the question of reasonableness and (2) prove a protectable business interest. Again, we may not substitute our judgment for that of the trial court. *Davis,* 571 S.W.2d at 862.

Further, reformation can occur only if a court finds that the covenant meets the section 15.50(1) criteria. TEX.BUS. & COM. CODE ANN. § 15.51(c) (Vernon Supp.1990). Recon could not show that the agreements would probably be reformed. *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 685 (Tex.1990). Similarly, the injunctive relief provided by section 15.51(a) is also predicated on compliance of the covenant with section 15.50(1) and (2). We hold that the trial court did not clearly abuse its discretion by failing to grant Recon temporary relief on

statutory grounds. We overrule point of error three.

### 2. *Findings of Fact and Conclusions of Law*

In its points number four through fourteen, Recon contends the trial court abused its discretion by making certain findings of fact and conclusions of law. Recon argues that various findings and conclusions were erroneous: (1) as a matter of law; (2) because no evidence supported some of the findings and conclusions; or (3) because other findings and conclusions were against the greater weight and preponderance of the evidence. The only issue before the trial court in a temporary injunction hearing is whether the applicant is entitled to preservation of the status quo of the subject matter of the suit pending trial on the merits. *Davis,* 571 S.W.2d at 862. An applicant may not use the ruling on a temporary injunction to get an advance ruling on the merits; the determination on appeal is limited to whether the trial court abused its discretion in granting or denying the temporary injunction. *Iranian Muslim Org. v. City of San Antonio,* 615 S.W.2d 202, 208 (Tex.1981); *Bethke,* 730 S.W.2d at 434. Recon seeks an advance ruling on the merits of the suit by requesting our ruling on these matters. Resolution of these matters must await appeal from a final judgment. *Bethke,* 730 S.W.2d at 434. We overrule points of error four through fourteen.

### NO NECESSITY FOR INTERLOCUTORY APPEAL

Recon filed this case in April of 1990. Counsel admitted at oral argument that the parties had neither tried the case on the merits, nor had Recon requested a trial setting. This appeal, like many other temporary injunction appeals, was unnecessary. We see no reason why Recon could not have prosecuted its claim to final judgment in less time than required by this interlocutory appeal, which decides nothing more than whether the trial court abused its discretion in entering the order that it

did. As we have noted, the most expeditious way of obviating the hardship of an unfavorable preliminary order is to try the case on the merits. *See, e.g., Irving Bank and Trust Co. v. Second Land Corp.*, 544 S.W.2d 684 at 689 (Tex.Civ.App.—Dallas 1976, writ ref'd n.r.e.). Then both the trial court and the appellate courts can render judgment finally disposing of the controversy. *See Texas Foundries, Inc. v. International Moulders & Foundry Workers' Union*, 151 Tex. 239, 248 S.W.2d 460, 464 (1952).

We affirm the trial court's order denying the temporary injunction.