**HILB, ROGAL & HAMILTON COMPANY OF TEXAS,**
Appellant,

v.

**Nancy W. WURZMAN, Appellee.**

**No. 05–93–00223–CV.**

Court of Appeals of Texas,
Dallas.

Aug. 13, 1993.

Rehearing Overruled Sept. 21, 1993.

Tori S. Levine, Vial Hamilton, Koch & Know, Dallas, for appellant.

Robert F. Maris, Thomas I. Higier, Haynie Higier Maris & Foxman, P.C., Dallas, for appellee.

Before McGARRY, C.J., and BAKER and ROSENBERG, JJ.

## OPINION

BAKER, Justice.

HRH appeals the trial court's partial denial of its application for a temporary injunction. HRH sued Wurzman to enforce the confidentiality and noncompetition terms of HRH's employment agreement with Wurzman. HRH contends the trial court abused its discretion in denying its request for a temporary injunction and in reaching certain findings of fact and conclusions of law. Wurzman asserts a cross point, claiming the trial court erred in reaching a certain finding of fact and conclusion of law. We affirm the trial court's order.

## THE DISPUTE BETWEEN THE PARTIES

HRH is the Dallas office of a large national insurance agency. HRH is in the business of bringing together those seeking insurance coverage with insurance companies seeking customers. HRH solicits customers from the business community and collects customer information from these prospects. HRH markets this information to various insurance companies. These insurance companies then bid for the business, and HRH presents the best bid to the customer.

HRH's major assets are its customer base, its customer information, and good will. Customer information consists of the customer lists, customer risk characteristics, policy expiration dates, policy terms, conditions, and rates. HRH spends a great deal of time and expense obtaining customer information. HRH restricts access to its customer information on a need-to-know basis.

In 1990, HRH hired Wurzman as a new business producer. HRH required Wurzman to sign an employment agreement when it hired her and annually as a condition of continued employment. In 1992, Wurzman

signed her third employment agreement with HRH.

The 1992 employment agreement was for a one-year term with a one-year renewal. However, either party could terminate with thirty days' written notice. The agreement required Wurzman to produce new business as her primary duty and secondarily to service HRH's clients assigned to her by HRH. All business generated or serviced by an employee became the sole property of HRH. This agreement also had a noncompetition and nonpiracy clause.

Before she went with HRH, Wurzman did not sell insurance policies. HRH secured the necessary sponsorship for Wurzman to obtain an insurance license. HRH paid for Wurzman's continuing education requirements and insurance licenses. While employed at HRH, Wurzman was a nationwide top producer of new business.

In the spring of 1992, Wurzman sought advice about setting up a competing agency. In November 1992, Wurzman incorporated Prime Insurance Agency to compete with HRH. During the Thanksgiving weekend before she tendered her written resignation to HRH, she took several HRH files home and copied them.

By letter dated December 1, 1992, Wurzman gave thirty days' notice of her resignation. The next day she offered to buy some of the clients she serviced. HRH refused to sell any clients to Wurzman. Wurzman solicited HRH employees to join her new agency. Wurzman also began contacting existing HRH customers about getting their business.

When HRH found out about Wurzman's activities, it discharged her before her resignation took effect. HRH then filed this suit seeking an injunction to prevent Wurzman from violating the noncompetition and nonpiracy terms of her employment agreement with HRH.

## THE ISSUE

The only issue before the trial court in a temporary injunction hearing is whether the court should issue an injunction to preserve the status quo of the subject matter of the suit pending trial on the merits. *Davis v.* *Huey,* 571 S.W.2d 859, 862 (Tex.1978); *Recon Exploration, Inc. v. Hodges,* 798 S.W.2d 848, 851 (Tex.App.—Dallas 1990, no writ).

## THE STANDARD OF REVIEW

We limit our review of a temporary injunction order to determining whether the trial court clearly abused its discretion in granting or denying injunctive relief. *Davis,* 571 S.W.2d at 862; *Bethke v. Polyco, Inc.,* 730 S.W.2d 431, 434 (Tex.App.—Dallas 1987, no writ). We may not substitute our judgment for that of the trial court. *Davis,* 571 S.W.2d at 862; *Recon Exploration,* 798 S.W.2d at 851. An abuse of discretion does not exist where the trial court bases its decision on conflicting evidence. *Davis,* 571 S.W.2d at 862; *Zmotony v. Phillips,* 529 S.W.2d 760, 762 (Tex.1975) (per curiam).

## APPLICABLE LAW

### A. Injunctive Relief—Common Law

To secure a temporary injunction at common law, a party must plead and prove a probable right to recovery and a probable irreparable injury if the court denies temporary equitable relief. *Ballenger v. Ballenger,* 694 S.W.2d 72, 76 (Tex.App.—Corpus Christi 1985, no writ). The trial court may not grant injunctive relief unless the applicant also shows that it has no adequate remedy at law for interim damages that may result while suit is pending. *Ballenger,* 694 S.W.2d at 76.

An existing legal remedy is adequate if it is as complete, practical, and efficient to the ends of justice and its prompt administration as is equitable relief. *Brazos River Conservation & Reclamation Dist. v. Allen,* 141 Tex. 208, 171 S.W.2d 842, 846 (1943). No adequate remedy at law exists if damages are incapable of calculation or if a defendant is incapable of responding in damages. *Bank of the Southwest, N.A., Brownsville v. Harlingen Nat'l Bank,* 662 S.W.2d 113, 116 (Tex.App.—Corpus Christi 1983, no writ).

Although an applicant for temporary injunction need not prove that it will win on the merits, it has the burden of showing a probable right to final recovery and a proba-

ble interim injury. *Recon Exploration,* 798 S.W.2d at 851. The common law clothes the trial court with broad discretion in determining whether an applicant has met its burden. *Transport Co. v. Robertson Transports, Inc.,* 152 Tex. 551, 261 S.W.2d 549, 552 (1953).

## B. Injunctive Relief—Statutory

 If an applicant relies on a statute that defines the requirements for injunctive relief, then the express statutory language supersedes common law requirements. *See Texas Farm Bureau Cotton Ass'n v. Stovall,* 113 Tex. 273, 253 S.W. 1101, 1108 (1923); *Rio Grande Oil Co. v. State,* 539 S.W.2d 917, 921 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.). Section 15.50 of the Texas Business and Commerce Code provides the criteria for enforceability of covenants not to compete. *See* Tex.Bus. & Com.Code Ann. § 15.50 (Vernon Supp.1993). If the promisor breaches a covenant not to compete, section 15.51 of the Texas Business and Commerce Code provides that a court may award the promisee damages, injunctive relief, or both damages and injunctive relief. *See* Tex.Bus. & Com. Code Ann. § 15.51 (Vernon Supp.1993).

## HRH'S ARGUMENTS

In its first point of error, HRH argues the trial court abused its discretion because HRH proved its right to a temporary injunction pending a full trial on the merits. HRH asserts that it carried its burden to show probable right of recovery and a probable interim injury. HRH argues it proved its right to equitable relief because the covenants for nonpiracy are enforceable. HRH contends the protection of its business interests, good will, client base, customer information, and trade secrets are all protected interests. Alternatively, HRH argues that its contract meets the requirements of section 15.50 of the Texas Business and Commerce Code and that the statute entitles it to an injunction. *See* Tex.Bus. & Com.Code Ann. § 15.50 (Vernon Supp.1993).

## A. Injunctive Relief—Common Law

 HRH argues it showed a probable right of recovery at the hearing on its application for temporary injunction. It argues that the evidence showed its customer information is confidential, proprietary, and valuable. HRH installed security measures to protect its customer information. It limited access to the files and divided its customers' files on a need-to-know basis only. HRH also restricted its computer system by forcing limited access codes depending on an employee's level.

HRH argues Wurzman had never sold insurance before HRH employed her. When HRH employed Wurzman in 1990, HRH required Wurzman to sign an employment contract with a covenant not to disclose or use customer information as well as a covenant not to compete. HRH trained Wurzman, provided her with a customer service representative support staff, a marketing department, and many insurance markets not available to all competitors or other individuals.

HRH maintains that its evidence showed that Wurzman misappropriated its customers and its trade secrets. Before Wurzman tendered her resignation to HRH, she incorporated Prime Insurance Agency to compete with HRH. Wurzman told fellow employees that she would try to buy accounts from HRH but if HRH would not sell the accounts, she would take the accounts anyway. HRH points out that on Thanksgiving weekend of 1992 Wurzman rented a copy machine and copied 1000 pages of HRH customer information for her personal purposes. Wurzman resigned from HRH effective December 31, 1992 by her letter dated December 1, 1992. The day after she tendered her resignation letter, she offered to buy HRH clients. HRH refused to sell its clients.

HRH argues this evidence shows a breach of the restrictive covenants and a probable right by HRH to recover on the merits. HRH also contends that it proved irreparable injury because Wurzman conceded she could not pay a judgment of $1,280,000 if the trial court rendered one against her in that amount. This figure is the amount HRH calculated it would suffer in loss of premiums and client information if all the accounts Wurzman serviced left HRH.

Wurzman testified she was reluctant to sign the last employment contract because of

the burdensome noncompetition provisions. She testified HRH threatened her with termination both verbally and in writing if she did not sign. Wurzman said HRH led her to believe that HRH did not intend to enforce the restrictive covenants. HRH representatives advised her that HRH preferred an economic resolution to any legal dispute with a former producer. These representations were consistent with HRH's prior conduct with other producers who left HRH. HRH had never sought injunctive relief against a departing producer even if that producer violated terms of the noncompetition clause. She said her supervisor, Mr. Kaphart, told her he did not believe that the noncompetition covenants were enforceable.

The record shows that insurance accounts are susceptible to dollar valuations. Companies in the insurance industry, including HRH, regularly buy and sell insurance accounts. The monetary value of the accounts that Wurzman serviced is readily ascertainable. A monetary payment would fully pay HRH for the loss of the accounts. The record reflects that Wurzman said she could not respond to a judgment for 1.28 million dollars. However, because of the short time between the date the trial court entered the partial injunction and May 17, the date the trial court set the case on the merits, HRH's interim damages would have been much less than 1.28 million dollars.

The trial court heard conflicting evidence on both the issue of probable right of recovery and an adequate remedy at law for interim damages. An abuse of discretion does not exist if the trial court heard conflicting evidence and evidence appears in the record that supports the trial court's decision. *Davis,* 571 S.W.2d at 862; *Seaborg Jackson Partners v. Beverly Hills Sav.,* 753 S.W.2d 242, 245 (Tex.App.—Dallas 1988, no writ). We hold the trial court did not clearly abuse its discretion in denying HRH an injunction on common law equitable grounds.

### B. Injunctive Relief—Statutory

During oral argument, we questioned whether HRH pleaded for statutory injunctive relief under section 15.50 of the Texas Business and Commerce Code. In a post-submission letter brief, HRH contends that section 15.50 does not provide a cause of action for violation of a covenant not to compete but merely establishes the criteria for enforceability of covenants not to compete. HRH also contends that a party seeking relief need not specifically plead a statute. *See Bellefonte Underwriters Ins. Co. v. Brown,* 663 S.W.2d 562, 575 (Tex.App.—Houston [14th Dist.] 1983), *rev'd on other grounds,* 704 S.W.2d 742 (Tex.1986).

HRH points out that in *DeSantis v. Wackenhut Corp.,* the Texas Supreme Court reviewed a covenant not to compete both under common law and under section 15.50. *See DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670 (Tex.1990), *cert. denied,* 498 U.S. 1048, 111 S.Ct. 755, 112 L.Ed.2d 775 (1991). HRH observes that section 15.50 was not in effect until the *DeSantis* case was on appeal; therefore, Wackenhut could not have requested relief in the trial court under section 15.50. HRH concludes it need not specifically plead section 15.50 of the Texas and Business Commerce Code to contend the statute applies or to secure relief under its provisions.

HRH misplaces its reliance on *DeSantis.* A review of *DeSantis* reflects the supreme court's reference to section 15.50 is a discussion of the enforcement of a covenant not to compete. The supreme court did not reach the issue of whether the statute applied. This is because the court held that Wackenhut did not establish the elements of a valid covenant under the statute. *See DeSantis,* 793 S.W.2d at 685. The nature of this Court's question is not whether section 15.50 provides a cause of action, but whether HRH relied on section 15.50 in the trial court. If it did, the provisions of the statute supersede the common law requirements for injunctive relief. *See Texas Farm Bureau Cotton Ass'n,* 253 S.W. at 1108.

The criteria for enforceability of covenants not to compete under section 15.50 are completely different from the common law requirements for injunctive relief. *Compare* Tex.Bus. & Com.Code Ann. § 15.50 *with Ballenger,* 694 S.W.2d at 76. To assert the statutory theory for injunctive relief on ap-

peal, HRH must have raised the issue by a pleading in the trial court. *See* TEX.R.APP.P. 52(a); *NCNB Tex. Nat'l Bank v. Sterling Projects, Inc.,* 789 S.W.2d 358, 360 (Tex. App.—Dallas 1990, writ dism'd w.o.j.); *Security Sav. Ass'n v. Clifton,* 755 S.W.2d 925, 932 (Tex.App.—Dallas 1988, no writ).

HRH's verified petition and application for a temporary injunction pleads for equitable injunctive relief because, as it alleges, it will suffer irreparable harm and damages and has no adequate remedy at law. HRH does not point to the record, nor can we find in the record that HRH requested the trial court to grant relief on any statutory grounds. Because HRH did not allege and submit this theory to the trial court, HRH has not preserved this argument for review. *NCNB Texas Nat'l Bank,* 789 S.W.2d at 360.

We overrule HRH's point of error number one.

## THE TRIAL COURT'S FINDINGS AND CONCLUSIONS

In its points of error numbers two through five, HRH contends the trial court abused its discretion by: (1) concluding that HRH's customer base, customer information, and goodwill are not protected interests; and (2) denying the temporary injunction because Wurzman's own abilities and pre-existing contacts make her value unique to her company and her. HRH contends the trial court erred because there is no evidence or insufficient evidence to support the trial court's findings and conclusions.

Wurzman asserts a cross point. She contends the trial court abused its discretion in holding that the covenant not to complete is ancillary to an otherwise enforceable agreement because of the thirty-day notice provision in the employment agreement.

■ The only issue before the trial court in a temporary injunction hearing is whether the trial court should issue an injunction to preserve the status quo of the suit pending trial on the merits. *Davis,* 571 S.W.2d at 862; *Recon Exploration,* 798 S.W.2d at 853. An applicant may not use the ruling on a temporary injunction to get an advanced ruling on the merits. The limited issue on

appeal is whether the trial court abused its discretion in granting or denying the temporary injunction. *Iranian Muslim Org. v. City of San Antonio,* 615 S.W.2d 202, 208 (Tex.1981); *Bethke,* 730 S.W.2d at 434. Both HRH and Wurzman seek advance rulings on the merits of the suit by requesting our consideration of these matters. Resolution of these issues must await appeal from a final judgment. *Recon Exploration,* 798 S.W.2d at 853; *Bethke,* 730 S.W.2d at 434. We overrule HRH's points of error two through five and Wurzman's cross point of error.

## UNNECESSARY INTERLOCUTORY APPEAL

HRH filed its suit December 31, 1992. The trial court heard evidence on the temporary injunction on January 21 and 23, 1993. The trial court entered the complained of order on February 2, 1993. In that order, the trial court set the case for trial on the merits on May 17, 1993. At oral argument, counsel for HRH told this Court the parties passed the May trial setting by agreement. As of the date of oral argument, the parties had not tried the case.

■ We adhere to our position that this appeal, like many temporary injunction appeals, is unnecessary. *See Recon Exploration,* 798 S.W.2d at 853. We reaffirm our conclusion that the fastest way of obviating the hardship of an unfavorable preliminary order is to try the case on the merits. *Recon Exploration,* 798 S.W.2d at 854; *Irving Bank and Trust Co. v. Second Land Corp.,* 544 S.W.2d 684, 689 (Tex.Civ.App.—Dallas 1976, writ ref'd n.r.e.). Indeed, the Texas Supreme Court has held that trial courts are to be encouraged to proceed expeditiously from the grant or denial of temporary injunctive relief to full consideration of the merits to reduce the necessity for interlocutory appeals. *See Coalition of Cities v. Third Ct. of App.,* 787 S.W.2d 946, 947 (Tex.1990) (per curiam) (orig. proceeding).

We affirm the trial court's order denying the temporary injunction.