Opinion issued September 22, 2011.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-11-00323-CV

———————————

Intercontinental Terminals Company, LLC, Appellant

V.

Vopak North
America, INC., Vopak Terminal Deer Park, INC., AND PORT TERMINAL RAILROAD
ASSOCIATION, Appellees



 



 

On Appeal from the 133rd District Court

Harris County, Texas



Trial Court Case No. 1066657

 



 

O P I N I O N

          Intercontinental
Terminals Company LLC (ITC) appeals from a temporary injunction in favor of Vopak
North America, Inc. and Vopak Terminal Deer Park, Inc. (collectively, Vopak),
which allows Vopak certain use of ITC’s railroad track during the pendency of
this litigation. ITC challenges the trial court’s temporary injunction on the
grounds that it impermissibly alters the status quo and is not supported by
evidence of two elements essential to temporary injunctive relief: probable,
imminent, and irreparable harm and a probable right to recover. We conclude
that the trial court did not abuse its discretion in determining that its order
was necessary to preserve the status quo and that the order is supported by
evidence of probable, imminent, and irreparable harm and a probable right to
recover. We therefore affirm the trial court’s temporary injunction order.

Background

ITC and Vopak are neighbors and
competitors.[1]
These two storage and transport businesses each have a location in Deer Park,
Texas, alongside the Houston ship channel. The land on which they are located was
once a single property owned by Union Equity Cooperative Exchange, Inc. In
1972, Union Equity sold a parcel of its land to Robertson Land Company. At the
time of the sale, Union Equity and Robertson Land entered into a “lead trackage
agreement.” Under this agreement, Union Equity granted Robertson Land a right
to use its railway track, track 805, which traverses Union’s land and connects
to the Port Terminal Railway Association’s (PTRA) main rail line. In exchange, Robertson
Land agreed to share in track 805’s maintenance costs, proportionate to its track
usage.[2] 

Vopak now owns the land sold to
Robertson Land and uses track 805 as Robertson Land’s successor under the lead
trackage agreement. ITC owns the land on which track 805 is located and is
Union Equity’s successor under the agreement. Railway transportation is an
important part of both ITC’s and Vopak’s storage and transport businesses.
Track 805 is their only rail access to the PTRA’s main line. Much of this
litigation centers on the following language in the agreement: “Any movement of
[Vopak’s] cars over [ITC’s] track shall be subject to the control of [ITC] so
as not to interfere with [ITC’s] use thereof.”

During the past decade, ITC, Vopak,
and a third party, Clear Harbors, have shared use of track 805. The number of
railcars inbound or outbound to ITC or Vopak varied widely on a day-to-day
basis. For example, over a four day period in 2009, Vopak received zero
railcars the first day, fifty-five railcars the next day, ten railcars the
third day, and fifty-seven railcars the fourth day. Every year for the past
three years, Vopak has received seventy railcars or more in a single day and
has also received zero railcars on some days. Vopak has received in excess of
100 railcars in a single day in the past. Vopak has invested more than $72
million in rail-related infrastructure.

Historically, ITC and Vopak transported
their materials via manifest trains, which are generally made up of railcars
holding different types of product from multiple customers. In 2010, Vopak
anticipated an increased demand for storage of ethanol and implemented a
business plan that would allow it to receive ethanol via unit trains. Unit
trains are considerably longer than manifest trains and generally transport
only a single product from a single customer. This new delivery method was
likely to result in an increase in the number of cars delivered to Vopak over
track 805. After learning of Vopak’s intentions, ITC attempted to limit Vopak’s
use of track 805 to a maximum of thirty-five railcars per day going into Vopak’s
facility and thirty-five railcars per day going out. In May 2010, ITC
communicated this limit to the PTRA, which handles rail deliveries to ITC’s and
Vopak’s Deer Park locations. In June 2010, ITC informed Vopak of its intended
limitation on Vopak’s use of the track. Vopak disputed ITC’s right to impose
the proposed limit on Vopak’s track use. 

The PTRA was reluctant to take a
side in the dispute, and in early-October 2010, it filed a petition seeking a
declaration of ITC’s and Vopak’s rights relating to track 805. Vopak filed a
cross-action and sought to enjoin ITC from restricting or interfering with its
use of track 805, both during the pendency of the litigation and permanently.
After several evidentiary hearings,[3] the trial court entered a
temporary injunction order enjoining ITC from restricting Vopak’s use of the
track to less than seventy cars per day into Vopak’s facility and seventy cars
per day out of Vopak’s facility. That injunction is the subject of this
interlocutory appeal.

Standards
for Granting and 

Reviewing
Temporary Injunction

 

A temporary injunction is an extraordinary remedy, the
purpose of which is to preserve the status quo of the litigation’s subject
matter pending a trial on the merits. Butnaru v. Ford Motor Co., 84 S.W.3d 198, 204 (Tex. 2002). To
obtain a temporary injunction, an applicant must show: (1) a cause of action,
(2) a probable right to the relief sought, and (3) a probable, imminent, and
irreparable injury in the interim. Id.; Mattox v. Jackson, 336 S.W.3d
759, 762 (Tex. App.—Houston [1st Dist.] 2011, no pet.). The temporary
injunction applicant bears the burden of production—i.e., it must offer some
evidence of each of these elements. See In
re Tex. Natural Res. Conservation Comm’n, 85 S.W.3d 201, 204 (Tex. 2002)
(quoting Camp v. Shannon, 162 Tex.
515, 348 S.W.2d 517, 519 (1961); Dallas Anesthesiology Assocs., P.A. v. Tex.
Anesthesia Group, P.A., 190 S.W.3d 891, 897 (Tex. App.—Dallas 2006,
no pet.).

The decision to grant or deny an injunction rests within the
trial court’s sound discretion. Butnaru, 84 S.W.3d at 204. We will reverse the trial court’s ruling
only if it has abused that discretion. Id.
A trial court abuses its discretion only if it reaches a decision so
arbitrary and unreasonable that it amounts to a clear and prejudicial error of
law or if it clearly fails to correctly analyze or apply the law. In re
Olshan Found. Repair Co., LLC, 328 S.W.3d 883, 888 (Tex. 2010). We may not
substitute our judgment for the trial judge’s. New Process Steel Corp. v. Steel
Corp. of Tex., 638
S.W.2d 522, 524 (Tex. App.—Houston [1st Dist.] 1982, no writ). We view the evidence submitted to the
trial court in the light most favorable to the court’s ruling, draw all
legitimate inferences from the evidence, and defer to the trial court’s
resolution of conflicting evidence. CRC-Evans Pipeline Int'l, Inc. v. Myers, 927 S.W.2d 259, 262 (Tex.
App.—Houston [1st Dist.] 1996, no pet.). Our review of the trial court’s
decision is limited to the validity of its temporary injunction order; we do
not consider the merits of the underlying case. Davis v. Huey, 571 S.W.2d 859, 861–62 (Tex. 1978).




 

Temporary Injunction

A.      The trial court’s temporary injunction
preserves the status quo

ITC contends that the only
permissible use of a temporary injunction is to preserve the status quo but that
the trial court’s temporary injunction changes, rather than preserves, the
status quo. According to ITC,
the circumstances that existed in June 2010 establish the status quo. ITC
points out that under the injunction’s seventy-railcars-per-day limit, Vopak
could receive as many as 2,100 railcars each month. By comparison, ITC asserts,
Vopak received an average of 692 railcars per month from January to June 2010
and has not received more than 1,000 railcars in any single month over the last
seven years. 

Vopak rejects ITC’s framing of the status quo, contending
that the status quo is instead established by the circumstances that have
existed over the parties’ forty-year relationship. Vopak asserts that ITC has
never before placed any pre-determined limitation on the number of railcars inbound
or outbound to Vopak and that Vopak has often received seventy or more railcars
in a single day. Thus, Vopak contends that any alteration of the status quo in
the injunction favors ITC by placing a limit on the number of cars Vopak may
receive when no limit existed before this dispute.

In the injunction context, the status quo is “the last,
actual, peaceable, non-contested status that preceded the pending controversy.”
In re Newton, 146 S.W.3d 648, 651 (Tex. 2004). Here, we look to evidence
of the parties’ practices up until February 2010—before Vopak began
implementing its new business plan and before ITC began attempting to enforce a
pre-determined limitation on Vopak’s use of the track—to determine the status quo.
See Lifeguard Benefit Servs., Inc. v. Direct Med. Network Solutions, Inc.,
308 S.W.3d 102, 114 (Tex. App.—Fort Worth 2010, no pet.) (noting that, if one
party takes action that alters relationship between parties, status quo is
relationship that existed before action) (citing Benavides Indep. Sch. Dist.
v. Guerra, 681 S.W.2d 246,
249 (Tex. App.—San Antonio 1984, writ ref’d n.r.e.). We consider the parties’
historical use and operation of track 805 over the course of their relationship
under the track usage agreement. See
Pharaoh Oil & Gas, Inc. v. Ranchero Esperanza, Ltd., 343 S.W.3d 875,
882 (Tex. App.—El Paso 2011, no pet. h.) (concluding that status quo was
circumstances that existed between parties from 1992 to 2004, when dispute
arose). 

The evidence on the parties’ historical use of track 805
demonstrates that the average number of railcars Vopak has transported into or
out of its facility over track 805 on any given day is considerably less than
seventy.  But that number varied widely
on a day-to-day basis and was sometimes well over seventy. The evidence also
shows that ITC has never, before this dispute, attempted to place a pre-determined
limitation on the number of railcars Vopak transports over track 805 on a
daily, monthly, or yearly basis. There is no evidence tending to demonstrate
that that ITC’s business operations will be disrupted if Vopak transports seventy
railcars into or out of its facility over track 805 in a single day.

Generally, “whe[n] the applicant for temporary relief proves
the probability of some easement right in the property of another, the status
quo is the applicant’s continued right to exercise such possession of the
property as the easement right carries with it.” Getz v. Boston Sea Party of
Houston, Inc., 573 S.W.2d 836, 838 (Tex. Civ. App.—Houston [1st Dist.] 1978,
no writ); see also AIMCO Props., L.P. v. Time Warner Entm’t-Advanced/Newhouse
P’ship, No. 03-97-00340-CV, 1997 WL 590675 (Tex. App.—Austin Sept.
25, 1997, no pet.) (citing Getz for
this proposition). The parties agree that Vopak has some easement right to the
use of track 805. Their disagreement relates to the parameters of ITC’s right
to restrict Vopak’s use of the track under the track usage agreement. 

The trial court could have reasonably concluded that its
seventy-railcars-per-day limit balanced the parties’ competing interests in the
status quo: Vopak’s interest in operating its business free from new
restrictions on its track usage and ITC’s interest in preventing Vopak from
expanding its track usage to a point that interferes with ITC’s own operations.
If Vopak wants to receive 100 railcars on one particular day, it will have to
reallocate those deliveries to comply with the trial court’s injunction, even
though it has received more than 100 railcars in a single day in the past
without incident. Correspondently, if Vopak transports the maximum number of
railcars permitted under the injunction each day, Vopak’s track usage under the
injunction will far exceed its historical track usage. But the trial court was
not required to presume that Vopak will abuse the injunctive relief granted. ITC
is free to seek modification of the trial court’s injunction if  Vopak’s use of the track under the injunction
is so excessive as to interfere with ITC’s own use of the track. 

Under these circumstances, we hold that the trial court did
not abuse its discretion in its efforts to preserve the status quo in its
temporary injunction. Butnaru,
84 S.W.3d at 204.

B.      Vopak
presented evidence of probable, imminent, and irreparable harm

ITC next contends that Vopak did
not present evidence that it would suffer probable, imminent, and irreparable
harm if the temporary injunction was not granted. ITC asserts that Vopak’s
evidence of harm is too dated to show imminent harm because most of its evidence
was presented at the first temporary injunction hearing, which occurred over
five months before the trial court granted the temporary injunction now on
appeal. ITC also argues that Vopak could compensate for restrictions on its
track usage by using other means of transportation into and out of its facility,
and that Vopak’s customer contracts do not prevent Vopak from using other means
of transportation. ITC points out that Vopak did not prove that it actually
lost any customers as a result of the restrictions ITC imposed on its track 805
usage. Finally, ITC argues that Vopak’s asserted harm is monetarily compensable
and therefore not irreparable. 

With respect to its first
complaint, ITC cites no authority for its contention that a finding of imminent
harm cannot be based on evidence from an earlier temporary injunction hearing. Evidence
from more than five months earlier may be outdated but is not necessarily so.
ITC does not identify any specific evidence from the trial court’s earlier
hearings that it contends was no longer accurate or applicable at the time of
the trial court’s temporary injunction order. Much of Vopak’s evidence at the
first hearing in October tended to show factual circumstances of an enduring nature.
For example, Vopak presented evidence of the nature of its business and the “pivotal”
role that rail transport plays in its integrated transportation operations.
Absent a change in these facts, Vopak was not required to re-present this same evidence at the trial
court’s subsequent hearings. 

It is true that, in many
situations, harm that is imminent in October and December will no longer be
imminent the following April—the threat
having either been realized or passed. But the harm Vopak asserts here is of a
continuing nature: interference with its ongoing business operations and the
ramifications of the disruption caused by that interference. During the October
27, 2010 temporary injunction hearing, Vopak presented evidence that ITC’s
35-railcars-per-day restriction on Vopak would result in a backlog of
Vopak-bound railcars at the PTRA’s facility, as well as evidence of the effects
that backlog would have on Vopak’s customer-relations. At the April 13, 2011
temporary injunction hearing, Vopak presented evidence that such backlogs had
in fact occurred and were so severe that, a few weeks earlier, the PTRA had placed
an embargo on Vopak, prohibiting Vopak from allowing its customers to send it
deliveries by rail. Vopak submitted communications showing that the PTRA agreed
to lift the embargo only after ITC agreed to allow delivery of up to seventy
railcars per day to Vopak’s facility. Vopak’s evidence at the April 2011
hearing also included communications reflecting costs, delays, and customer
complaints relating to ITC’s restriction on Vopak’s use of track 805.

Viewing the evidence in the light most favorable to the
court’s ruling and deferring to the trial court’s resolution of conflicting
evidence, see CRC-Evans Pipeline,
927 S.W.2d at 262, we hold that the trial court did not abuse its discretion in
concluding that the harm to Vopak was imminent “because [ITC’s] car
restrictions are continuing and an embargo, one of which has already been
entered preventing Vopak’s customers from shipping cars to Vopak, will likely
occur again.”

ITC asserts that Vopak failed to present evidence
that it was unable to compensate for restrictions on its track usage through
use of other means of transportation, such as barges. Vopak, however, presented
testimonial evidence that the various means of transportation used by Vopak to
transport material into and out of its facility operate in conjunction with
each other and are interdependent on each other such that when rail transport was interrupted, it had a “domino effect”
in delays on the other means of transportation. Vopak also introduced evidence
that the customer, rather than Vopak, typically dictates the means of
transportation utilized to transport materials from the customer to Vopak’s
facility. Vopak’s Gulf Coast General Manager specifically testified that Vopak
could not fulfill its customer obligations by using barge transportation in the
place of railway transportation. His testimony also indicated that the loss of railways
as a means of transportation would be devastating to Vopak’s Deer Park operations,
that not allowing customers the option of delivery by railway would be
detrimental to Vopak’s customer relations not only at the Deer Park facility
but globally,[4]
that two customers had threatened to pull their business if Vopak remained
under ITC’s thirty-five-railcars-per-day restriction,[5] and that the track 805
restriction and backlog issues were impairing Vopak’s reputation. 

This testimony supports the trial
court’s conclusion that “ITC’s restrictions threaten to cause and will probably
cause at least the following harm to Vopak: business disruption, loss of
goodwill, loss of reputation in the marketplace, customer uncertainty, delays
in servicing dock/sea customers, backlog costs, [and] demurrage fees[.]” While
ITC attempted to controvert this evidence, the trial court was free to choose
which evidence to credit and which evidence to discredit, and we must view the
evidence in the light most favorable to the trial court’s ruling. See
CRC-Evans Pipeline, Int'l, 927 S.W.2d at 262. 

Finally, we conclude that there is
evidence in the record to support the trial court’s conclusion that “at least
some of the harm being suffered by Vopak cannot be remedied with the recovery
of money.” An injury is irreparable if it cannot be adequately remedied at law—i.e., if the injunction applicant cannot be
adequately compensated in damages or if damages are very difficult to measure
by any certain pecuniary standard. See Butnaru, 84 S.W.3d at 204; Ahmed v. Shimi
Ventures, L.P., 99 S.W.3d
682, 692 (Tex. App.—Houston [1st Dist.] 2003, no pet.); see also Lifeguard Benefit
Servs., Inc. v. Direct Med. Network Solutions, Inc., 308 S.W.3d 102,
111 (Tex. App.—Fort Worth 2010, no pet.). “An adequate remedy at law is one
that is as complete, practical, and efficient to the prompt administration of
justice as is equitable relief.” Cardinal
Health Staffing Network Inc. v. Bower, 106 S.W.3d 230, 235 (Tex.
App.—Houston [1st Dist.] 2003, no pet.); see
Dallas Anesthesiology Assocs.,
190 S.W.3d at 897 (same). Thus, if damages do not provide as complete,
practical and efficient a remedy as may be had by injunctive relief, the trial
court does not err in granting temporary injunction so long as the other
elements of injunctive relief are satisfied.

The harm found by the trial court
includes loss of goodwill and reputation in the marketplace. Threatened injury
to a business’s reputation and good will with customers is frequently the basis
for temporary injunctive relief. E.g., Lifeguard Benefit Servs., 308 S.W.3d at 118; Frequent Flyer Depot, Inc. v. Am.
Airlines, Inc., 281 S.W.3d 215, 228 (Tex. App.—Fort Worth 2009), cert.
denied, 130 S. Ct. 2061, 176 L. Ed. 2d 414 (U.S. 2010); T-N-T
Motorsports, Inc. v. Hennessey Motorsports, Inc., 965 S.W.2d 18, 24 (Tex.
App.—Houston [1st Dist.] 1998, pet. dism’d); Townson v. Liming, No. 06-10-00027-CV, 2010 WL 2767984, at *2–3
(Tex. App.—Texarkana July 14, 2010, no pet.) (mem. op.); Lionheart Co., Inc. v. PGS Onshore,
Inc., No. 10-06-00303-CV,
2007 WL 1704906, at *2 (Tex. App.—Waco June 13, 2007, no pet.) (mem. op.); RenewData
Corp. v. Strickler, No. 03-05-00273-CV, 2006 WL 504998, at *15–16 (Tex.
App.—Austin Mar. 3, 2006, no pet.) (mem. op.). While such injuries are not
categorically irreparable, the irreparable injury requirement is satisfied when
injuries of this nature are difficult  to
calculate or monetize. See, e.g., Frequent Flyer Depot, 281 S.W.3d at 228
(“Disruption to a business can be irreparable harm. Moreover, assigning a
dollar amount to such intangibles as a company’s loss of clientele, goodwill,
marketing techniques, and office stability, among others, is not easy.”)
(internal citations omitted); T-N-T Motorsports, 965 S.W.2d at 24
(affirming temporary injunction based on testimony that lost goodwill would be
“immeasurable”); Townson, 2010 WL
2767984, at *3 (“The
value of lost patients, lost business contacts and collaborations, and lost
hospital privileges are anything but fixed, settled, and indisputable. Rather,
by their very nature, it is likely that Liming might never even be aware of
specific patients and business contacts lost.”); RenewData, 2006 WL 504998, at *16 (“Because
it is difficult to assign a dollar value to loss of customer goodwill and
clientele, it constitutes an irreparable injury.”) (citing Graham v. Mary
Kay, Inc., 25 S.W.3d 749,
753 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); David v. Bache
Halsey Stuart Shields, Inc.,
630 S.W.2d 754, 757 (Tex. App.—Houston [1st Dist.] 1982, no writ). 

The testimony from Vopak’s Gulf Coast General Manager
supports the trial court’s conclusion that the loss of reputation and goodwill
threatened here would be “very difficult to calculate.” He further testified
that it would be “extremely difficult” to calculate the value of the Vopak
brand in order to determine the fiscal impact of its reputational injury.
Although ITC’s damage expert indicated that he could calculate the value of a
brand, he testified on cross-examination that it would be “rank speculation” to
try to determine how much, if any, future business Vopak would lose if a
customer terminated its relationship with Vopak due to rail transport issues. Moreover,
the trial court was free to credit Vopak’s evidence on this issue and
discredit ITC’s contrary evidence. Viewing the evidence in the light most
favorable to the trial court’s ruling, it supports the trial court’s conclusion
that the threatened injury to Vopak could not be adequately remedied at law. See
Lifeguard Benefit Servs.,
308 S.W.3d at 113; Frequent Flyer Depot,
281 S.W.3d at 228; T-N-T Motorsports, 965 S.W.2d at 24; Townson, 2010 WL 2767984, at *3; RenewData,
2006 WL 504998, at *16.

Because there is evidence to support it, the trial court did
not abuse its discretion in determining that Vopak would suffer probable,
imminent, and irreparable harm in the absence of injunctive relief. Cf. Butnaru, 84 S.W.3d at 211–12
(holding that the trial court did not abuse its discretion when there was
evidence to support its decision). 

C.      Vopak
presented evidence of a probable right to recover

ITC’s final contention on appeal is
that Vopak failed to established a probable right to recover on the merits,
noting that the trial court struck through the portion of Vopak’s proposed
order containing an express finding of probable right to recover. We conclude
that Vopak presented sufficient evidence of a probable right to recover on its
declaratory judgment action against ITC and that the trial court’s order was
not required to include a finding of probable right to recover.[6] 

We recognize that courts are often
particularly careful when it comes to the element of “probable right of
recovery,” sometimes referred to as “likelihood of success on the merits,”
because, by its plain language, this element seems to infringe upon two
well-engrained judicial prohibitions: against advisory opinions and against
forming opinions about the merits of the case before the conclusion of the
evidence. But the phrase “probable right of recovery” is a term of art in the
injunction context. Glattly
v. Air Starter Components, Inc., 332 S.W.3d 620, 638 (Tex. App.—Houston [1st Dist.] 2010,
pet. denied). To show a probable right to recover, an applicant need not show
that it will prevail at trial. Butnaru,
84 S.W.3d at 211 (citing Sun Oil Co. v.
Whitaker, 424 S.W.2d 216, 218 (Tex. 1968)). Nor does a finding of probable
right of recovery indicate a trial court’s evaluation of the probability that
the applicant will prevail at trial. Anderson Oaks (Phase I) Ltd. P'ship v.
Anderson Mill Oaks, Ltd., 734 S.W.2d 42, 44 n.1 (Tex. App.—Austin 1987, no
writ) (observing that probable right to recover “does not imply that the
applicant for temporary injunction must offer evidence and persuade the judge
to find from that evidence the adjudicative facts necessary for the applicant
to prevail on the merits, based on probabilities. . . . The hearing on
temporary injunction does not constitute a mini trial, in
advance, wherein the judge predicts the applicant’s chances of success at the
real trial, based upon the judge’s estimate of where the truth probably lies
concerning the adjudicative facts and the law made applicable thereto by the
pleadings in the case.”). Consequently, a finding of probable right to recover
has no precedential effect on the case at the trial stage. See Glattly, 332
S.W.3d at 638 (quoting 183/620 Group Joint Venture v. SPF Joint Venture, 765 S.W.2d 901, 904 (Tex.
App.—Austin 1989, writ dism’d w.o.j.) for proposition that finding of probable
right to recover “does not imply any kind of determination that becomes the law
of the case.”); see also Anderson Oaks, 734 S.W.2d at 44
n.1.

Instead, to show a probable right of recovery, the applicant
must plead a cause of action and present some evidence that tends to sustain
it. Camp v. Shannon, 348 S.W.2d 517, 519 (Tex. 1961); T-N-T
Motorsports, 965 S.W.2d at 23–24. The evidence must be sufficient to raise
“a bona fide issue [] as to [the applicant’s] right to ultimate relief.” 183/620
Group Joint Venture, 765
S.W.2d at 904; see also Nw. Bank v. Garrison, 874 S.W.2d
278, 281 (Tex. App.—Houston [1st Dist.] 1994, no writ); Rapid Settlements, Ltd. v.
Symetra Life Ins. Co., 234 S.W.3d 788, 797 (Tex. App.—Tyler 2007, no
pet.). Vopak has met this burden by (1) pleading a declaratory judgment action seeking
certain declarations regarding its right to use track 805 under the track usage
agreement and at law and (2) presenting some evidence tending to support its alleged
rights relating to use of track 805. 

Initially, the parties dispute the nature of Vopak’s
declaratory judgment action. ITC frames Vopak’s action as asserting that
Vopak’s right to use track 805 cannot be restricted in any way under any
circumstances, and asserts that Vopak has not presented evidence to support its
allegation of such unfettered use. Vopak frames its declaratory judgment action
as asserting that it has a right to use track 805 free from ITC’s
thirty-five-railcars-per-day restriction based on historical practices and because
Vopak’s use did not interfere with ITC’s use of the track. While Vopak’s
pleadings do contain assertions that ITC cannot interfere with its use of track
805, they also contain allegations that ITC may not terminate Vopak’s right to
use of track 805 or limit its use of the track to thirty-five railcars per day.
Because neither party requested formal findings of fact and conclusions of law,
we will uphold the trial court’s order if any of these legal theories are
supported by the record. Frequent Flyer
Depot, 281 S.W.3d at 220.

The trial court has broad discretion in determining whether
the pleadings and evidence support a temporary injunction. Recon
Exploration, Inc. v. Hodges,
798 S.W.2d 848, 851 (Tex. App.—Dallas 1990, no writ); Pub. Util. Comm’n of
Tex. v. Gen. Tel. Co. of the Sw., 777 S.W.2d 827, 829 (Tex. App.—Austin
1989, writ dism’d). Vopak’s evidence regarding a right to use track 805 includes
the track usage agreement and a related easement grant from Union Equity to
Robertson Land. On its face, the track usage agreement grants Vopak, as
successor to Robertson Land, the right to use track 805 to transport materials
from Vopak’s property, across ITC’s property, to the PTRA’s main rail line. The
agreement does not contain an express provision for termination of this right.
The agreement does expressly subject Vopak’s use of the track to  ITC’s control “so as not to interfere with
[ITC’s] use [of the track.]” But Vopak introduced some evidence indicating that
its use of the track was not interfering with ITC’s own use of the track and
that, despite long-term awareness of the track usage agreement, ITC had never
before attempted to restrict Vopak’s track use. Vopak also presented documentation
of ITC’s purchase of its property subject to the Robertson Land easement, extensive
evidence of  long-term use of track 805
by Vopak and its predecessors, and testimony indicating that ITC has never
before complained about Vopak’s track use, even when it exceeded 100 railcars
in a single day. Viewing this evidence in the light most favorable to the trial
court’s injunction order, see CRC-Evans Pipeline, Int'l, 927 S.W.2d at 262, Vopak put forth
some evidence tending to support at least one of the legal theories on which it
seeks a declaratory judgment. Based on Vopak’s allegations and this evidence,
the trial court could have reasonably concluded that Vopak had a probable right
of recovery. See Butnaru, 84 S.W.3d
at 211.

The trial court entered the proposed temporary injunction
order submitted by Vopak but made various delineations and alterations to the
order. Among the trial court’s changes, it struck-through and initialed a
paragraph relating to Vopak’s probable right of recovery:



In connection with its challenge to
the evidence of a probable right of recovery, ITC points out the trial court’s
strike-through of this paragraph, asserting that it indicates that the trial
court did not find a probable right of recovery.[7]

Rule 683 requires that an
injunctive order “set forth the reasons for its issuance.” Tex. R. Civ.
P. 683. In the temporary injunction context, this Court has held that
failure to comply with Rule 683 renders an injunction void. City of Navasota v. Nationstar Mortg., LLC,
No. 01-08-00915-CV, 2009 WL 103510, at *1 (Tex. App.—Houston [1st Dist.] Jan.
9, 2009, no pet.) (mem. op.); see also Indep.
Capital Mgmt., LLC v. Collins, 261 S.W.3d 792, 795 (Tex. App.—Dallas 2008, no pet.); AutoNation, Inc. v. Hatfield, 186 S.W.3d 576, 581 (Tex.
App.—Houston [14th Dist.] 2005, no pet.). But we do not read Rule 683 as
mandating that an injunctive order include a finding regarding
the injunction applicant’s probable right to recover in the injunctive order. See Tex. R. Civ. P. 683. 

The Texas Supreme Court has held
that Rule 683 mandates that a trial court granting a temporary injunction must
explain in the order its reasons for believing that the applicant has shown
that it will suffer injury if interlocutory relief is not granted but does not
require the trial court to provide reasons for believing that the applicant has
shown a probable right to final relief. State
v. Cook United, Inc., 464 S.W.2d 105, 106 (Tex. 1971); Transport Co. of Tex. v. Robertson Transports Inc., 261 S.W.2d 549,
556 (Tex. 1953); see also, e.g., Moreno v. Baker Tools, Inc., 808 S.W.2d 208, 210 (Tex.
App.—Houston [1st Dist.] 1991, no writ). An explanation of the pending harm to
the temporary injunction applicant, along with a specific recitation of the
conduct enjoined, is all that is necessary to achieve Rule 683’s purpose: “to
inform a party just what he is enjoined from doing and the reasons why he is so
enjoined.” Transport Co. of Tex., 261
S.W.2d at 552. For these reasons, we hold that Rule 683 does not mandate that
the trial court’s order expressly state that the trial court found a probable
right of recovery. We decline to make any inferences from the trial court’s
decision not to include unnecessary language in its order.

Conclusion

We hold that the trial court did not abuse its discretion in
entering the temporary injunction order. The order does not impermissibly alter
the status quo and is supported by sufficient evidence of probable, imminent,
and irreparable harm and a probable right of recovery. We therefore affirm the
temporary injunction order.

 

                                                                   Harvey
Brown

                                                                   Justice 

 

Panel
consists of Justices Jennings, Brown, and Huddle.











[1]           ITC
states that it is in the petrochemical storage and transfer business. Vopak
states that it provides storage and transport services for bulk liquid
chemicals and commodities.





[2]           Union
also granted Robertson an easement for the construction of a spur track to
connect track 805 to Robertson’s property.





[3]
          After a hearing on October 27,
2010, the trial court denied Vopak’s initial request for temporary injunction.
On December 2, 2010, the trial court entered a temporary restraining order
against ITC. On December 13, 2010, the trial court held a second hearing. On
March 31, 2011, the trial court entered a second temporary restraining order.
The trial court held a third evidentiary hearing on April 13, 2011, and entered
the temporary injunction at issue in this appeal on April 20, 2011.





[4]           ITC
argues that Vopak’s contracts do not mandate delivery by railcar, such that
Vopak could use other means of transportation without violating their
contractual obligations. But ITC cites to only one contract for this
proposition. Even if we were to accept ITC’s contention that the cited contract
does not require delivery by rail, it does not conclusively rebut the testimony
offered by Vopak that it has many contracts with customers that cannot be
fulfilled if Vopak does not have adequate access to railway transportation.





[5]           ITC
complains that Vopak did not prove that any customers actually did pull their
business, but evidence of customers threatening to take their business
elsewhere is some evidence of probable harm even if the customers have not yet
executed the threat.





[6]
          Vopak has asserted other
cross-claims against ITC, including tortious interference with existing and
prospective business relationships, unfair competition, antitrust violations,
breach of contract, and suit to quiet title. Because an applicant is required
only to plead and present evidence to support one cause of action to establish
a probable right of recovery, we need not reach whether Vopak has presented
evidence to support these additional causes of action. See Butnaru, 84 S.W.3d at 211.





[7]
          We requested supplemental
briefing on this issue, which the parties provided.