Opinion issued December 12, 2002











  

          
In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-02-00473-CV
____________
 
NORLYN ENTERPRISES, INC., Appellant
 
V.
 
APDP, INC., Appellee
 

 
 
On Appeal from the 61st District Court
Harris County, Texas
Trial Court Cause No. 2002-14046
 

 
 
O P I N I O N
          This is an accelerated interlocutory appeal


 of the trial court’s denial of Norlyn
Enterprises, Inc.’s post-termination motion for temporary injunction seeking
enforcement of a non-competition clause against APDP, Inc. We reverse and remand.
Factual and Procedural Background
          On April 26 and 30, 2002, the trial court conducted a hearing on Norlyn’s
motion for temporary injunction. The parties stipulated that the remedy sought in this
post-termination motion was the enforcement of the non-compete clause preventing
APDP from continuing to conduct its business in Arizona.


 Robert Gol, president of
APDP, and Larry Browne, president of Norlyn, were the only witnesses. 
                                        Gol testified that, in February 2000, he signed a Franchise Agreement making
APDP the sole Arizona franchisee of DSI Franchising, Inc. (DSIF), the franchisor. 
As a franchisee, APDP paid royalties so it could use the DSI system developed by
DSIF for marketing and providing automotive parts delivery services to automobile
dealers and to manufacturers and wholesale distributors of automotive parts. The
“system” included:
(a) the trademarks, trade names, service marks, logos, emblems, and
indicia of origin, designated by DSIF in writing of use in connection
with the System . . . ; (b) confidential operating procedures, standards
and specifications, and other intellectual property, including non-public
trade secrets, proprietary information, and knowhow; (c) marketing
programs and materials; and (d) training programs and materials. 

(Section 1 of the Franchise Agreement.) 
          DSIF and the DSI system were acquired by Noble International, Ltd. in July
2000. At approximately the same time, Noble acquired ATD, a competitor of APDP. 
APDP sued Noble, alleging that Noble conspired to compete with APDP, one of its
franchisees, by acquiring ATD, a competitor of APDP.


 Gol testified that the parties
entered into an agreed temporary restraining order wherein Noble agreed that ATD
would not compete with APDP. While Gol conceded competition “is an inherent risk
of business,” he argued that the competition should not be coming from one’s
franchisor.  Noble was acquired by Norlyn in February 2001, and on February 12,
2002, APDP sent Norlyn a notice of default in which APDP alleged, among other
things, that Norlyn breached the Franchise Agreement by conspiring with Noble to
compete in the franchised territory. The notice also indicated APDP was going to
join Norlyn and Larry Browne in the suit still pending against Noble in the 234th
District Court.  
          In March, Norlyn sent APDP a default notice alleging APDP was delinquent
in its royalty payments, and, on March 19, Norlyn sued APDP for breach of contract. 
On April 1, 2002, APDP received a notice of termination from Norlyn terminating the
franchise. On April 5, APDP filed its original answer, along with a counterclaim and
application for temporary restraining order. 
          APDP’s temporary restraining order was granted, and Norlyn was instructed
not to contact or communicate with any officer, employee, agent, or customer of
APDP and not to attempt to convert, use, or assume any of APDP’s assets. 
          APDP created a d/b/a and began to work under the name “A-to-Z.” Gol
admitted that A-to-Z was essentially the same company as APDP, but it had a new
telephone number and office location. APDP’s customers signed new contracts with
A-to-Z, and their service was uninterrupted. Gol testified that A-to-Z was not
competing with DSI because, after APDP’s franchise was terminated, there were no
DSI franchises in Arizona. 
          Browne, Norlyn’s president, testified that there are approximately 72 DSI
franchises nationwide, and he was concerned that if A-to-Z was permitted to compete
with DSI, then the franchise system would crumble. Despite the quantifiable nature
of the royalty payments, Browne testified he had not “added them up” to determine
the amount of potential damages. 
          The trial court denied Norlyn’s motion for temporary injunction and issued
findings of fact and conclusions of law.
Findings of Fact
          The trial court’s findings of fact are as follows: 
1. In February of 2000, APDP acquired DSI auto parts delivery service
franchise for the territory of Phoenix, Mesa, and Tucson, Arizona
(hereinafter referred to as the “DSI Franchise”) and executed a franchise
agreement by and between DSI Franchising, Inc. (DSIF) as franchisor
and APDP as franchisee (the “Franchise Agreement”), said Franchise
Agreement being the same agreement that is the subject of this lawsuit.
 
2. Robert Gol and Cliff Jones, the shareholders and officers of APDP,
were original investors and limited partners of a Texas partnership that
was formed to operate and own the first and only DSI Franchise in the
state of Arizona that began doing business in the fall of 1999. 
 
3. Prior to investing and operating the DSI Franchise, Gol, the president
of APDP, had operated and managed a delivery service business for 12
years. Dennis Pennela, the current manager of the DSI Franchise, had 
approximately 25 years of experience in the delivery and trucking
business prior to becoming manager of the DSI Franchise.
 
4. On or about July 25, 2000, Noble International, Ltd. acquired DSI
and DSIF. Consequently, Nobel became the Franchisor under the terms
of the Franchise Agreement. 
 
5. On or about February 28, 2001, Norlyn Enterprises, Inc. acquired all
DSI and DSIF assets, including the Franchise Agreement, from Noble
and became the Franchisor under the terms of the Franchise Agreement.
 
6. On February 12, 2002, APDP sent a notice of default to Norlyn
complaining of material breaches of the Franchise Agreement by
Norlyn. 
 
7. On April 5, 2002, APDP obtained a temporary restraining order
prohibiting Norlyn and Larry Browne from contacting the employees,
drivers, and customers of APDP. Subsequently, APDP ceased using the
DSI mark and name in the Franchise Agreement territory at the request
of Norlyn. 
 
8. The DSI Franchise system of auto parts delivery services is neither
unique nor proprietary. 
 
9. Norlyn had not attempted to quantify its damages it claims it has
allegedly suffered due to APDP’s doing business in the Franchise
Agreement territory as “A to Z.” 
 
10. Norlyn is not doing business in the Franchise Agreement territory
(state of Arizona).

Conclusions of Law

          The trial court stated that it denied Norlyn’s request for a temporary injunction 

because Norlyn “failed to show both irreparable injury, and lack of an adequate
remedy at law for the following reasons:”
1. Norlyn presented no evidence that the DSI Franchise system for auto
parts delivery services is neither unique nor proprietary. [sic] APDP’s
president and general manager received no special training or expertise
from Norlyn. The DSI Franchise system for delivery of auto parts is
therefore not a trade secret under Texas law and is not entitled to receive
legal protection. 
 
2. Norlyn failed to present any evidence that it cannot determine the
monetary amount that it has been damaged by APDP’s continuation of
an auto parts delivery service in the Franchise Agreement territory and
therefore has not shown why this injury cannot be measured and
compensated in money damages. 
 
3. Norlyn’s assertion that other franchisees will breach their franchise
agreements if the temporary injunction in this cause were denied is
speculative and does not constitute evidence of irreparable harm. 
 
4. Because Norlyn is not doing business in the Franchise Agreement
territory (in the state of Arizona), it cannot establish that it is currently
losing customers that it would otherwise have served, or employees that
it would otherwise have employed, or that its goodwill and reputation
are being damaged. To the extent that Norlyn maintains that, due to
APDP’s former association with Norlyn, APDP is succeeding in
business in a manner that it would not otherwise have enjoyed, Norlyn
has not shown why this injury cannot be measured and compensated in
money damages. (Snelling & Snelling, Inc. v. Ryvis, Inc., 1999 U.S.
Dist. LEXIS 17928 (N. D. Tex. Nov. 10, 1999). The court finds that
Norlyn cannot establish a substantial threat of irreparable injury in these
circumstances. 
 
          Norlyn appeals from the denial of the temporary injunction.
Standards of Review
Temporary Injunction—Traditional
          Traditionally, the sole issue before a trial court in a temporary injunction
hearing is whether the applicant may preserve the status quo, pending trial on the
merits. Davis v. Huey, 571 S.W.2d 859, 862 (Tex. 1978); T-N-T Motorsports, Inc.
v. Hennessey Motorsports, Inc., 965 S.W.2d 18, 21 (Tex. App.—Houston [1st Dist.]
1998, pet. dism’d). To be entitled to a temporary injunction, an applicant must plead
a cause of action, show a probable right to recover on that cause of action, and show
a probable injury in the interim. Sun Oil Co. v. Whitaker, 424 S.W.2d 216, 218 (Tex.
1968); T-N-T Motorsports, 965 S.W.2d at 23. A probable right of success on the
merits is shown by alleging a cause of action and presenting evidence that tends to
sustain it. T-N-T Motorsports, 965 S.W.2d at 23-24. Probable injury includes
elements of imminent harm, irreparable injury, and no adequate remedy at law for
damages. Id. at 24.
          Because an appeal of an order granting or denying a temporary injunction is an
appeal from an interlocutory order, the merits of the applicant’s case are not presented
for appellate review. Davis, 571 S.W.2d at 861; T-N-T Motorsports, 965 S.W.2d at
21. Rather, the decision to grant or deny a temporary injunction lies within the sound
discretion of the trial court, and we will not reverse that decision absent an abuse of
discretion. Walling v. Metcalfe, 863 S.W.2d 56, 58 (Tex. 1993); City of Houston v.
Todd, 41 S.W.3d 289, 294 (Tex. App.—Houston [1st Dist.] 2000, pet. denied).           An abuse of discretion occurs if the trial court (1) acts arbitrarily and
unreasonably, without reference to guiding rules or principles or (2) misapplies the
law to the established facts of the case. Baywood Country Club v. Estep, 929 S.W.2d
532, 535 (Tex. App.—Houston [1st Dist.] 1996, writ denied). An abuse of discretion
does not exist if the trial court heard conflicting evidence, and evidence appears in
the record that reasonably supports the trial court’s decision. CRC-Evans Pipeline
Int’l, Inc. v. Myers, 927 S.W.2d 259, 262 (Tex. App.—Houston [1st Dist.] 1996, no
writ). We may not substitute our judgment for that of the trial court. Id.
          When, as here, specific findings of fact and conclusions of law are filed and a
statement of facts is before the appellate court, the findings will be sustained if there
is evidence to support them, and the appellate court will review the legal conclusions
drawn from the facts found to determine their correctness. Id. at 263.
Temporary Injunction—Covenants Not to Compete Act
          The Covenants Not to Compete Act provides the criteria for enforceability of
a covenant not to compete. Tex. Bus. & Com. Code Ann. § 15.50 (Vernon 2002);
Butler v. Arrow Mirror & Glass, Inc., 51 S.W.3d 787, 795 (Tex. App.—Houston [1st
Dist.] 2001, no pet.). If the promisor breaches a covenant not to compete, section
15.51 of the Texas Business and Commerce Code provides that “a court may award
the promisee under a covenant not to compete damages, injunctive relief, or both
damages and injunctive relief for a breach by the promisor of the covenant.” Tex.
Bus. & Com. Code Ann. § 15.51(a) (Vernon Supp. 2002). Moreover, section 15.52,
entitled “Preemption of Other Law,” provides, “The criteria for enforceability of a
covenant not to compete provided by section 15.50 of this code and the procedures
and remedies in an action to enforce a covenant not to compete provided by Section
15.51 of this code are exclusive and preempt any other criteria for enforceability of
a covenant not to compete or procedures and remedies in an action to enforce a
covenant not to compete under common law or otherwise.” Tex. Bus. & Com. Code
Ann. § 15.52 (Vernon Supp. 2002); Butler, 51 S.W.3d at 795. Thus, a showing by
the promisee of an irreparable injury for which he has no adequate legal remedy is not
a prerequisite for obtaining injunctive relief under the Covenants Not to Compete
Act. Tex. Bus. & Com. Code Ann. §§ 15.50, 15.51(a); Butler, 51 S.W.3d at 795.
Covenants Not to Compete Act
          We apply the Covenants Not to Compete Act, which provides two criteria for
the enforceability of a covenant not to compete. Tex. Bus. & Com. Code Ann.
§ 15.50(a). The covenant must (1) be “ancillary to or part of an otherwise enforceable
agreement” and (2) contain “limitations as to time, geographical area, and scope of
activity to be restrained that are reasonable and do not impose a greater restraint than
is necessary to protect the goodwill or other business interest of the promisee.” Id.
          The Act expressly states that if the limitations as to time, geographical area, or
scope of activity to be restrained are not reasonable or they impose a greater restraint
than is necessary to protect the goodwill or other business interest of a promisee, “the
court shall reform the covenant to the extent necessary to cause the limitations . . . 
to be reasonable and to impose a restraint that is not greater than necessary” and
“enforce the covenant as reformed . . . .” Tex. Bus. & Com. Code Ann. § 15.51(c)
(Vernon Supp. 2002).



          The Act further provides that sections 15.50 and 15.51 “are exclusive and
preempt any other criteria for enforceability of a covenant not to compete . . . .” Tex.
Bus. & Com. Code Ann. § 15.52. Thus, section 15.52 makes it clear that the
legislature intended the Covenants Not to Compete Act “to largely supplant the Texas
common law relating to enforcement of covenants not to compete.” Light v. Centel
Cellular Co., 883 S.W.2d 642, 644 (Tex. 1994); see also Tex. Bus. & Com. Code
Ann. § 15.52.
Waiver
          APDP argues Norlyn has waived the right to have its case reviewed pursuant
to the Covenants Not to Compete Act because it failed to plead the Act or bring it to
the attention of the trial court. To support its position, APDP refers us to Hilb, Rogal
& Hamilton Co. of Texas v. Wurzman, 861 S.W.2d 30 (Tex. App.—Dallas 1993, no
writ), in which an employer challenged an order of the district court denying a
temporary injunction to enforce the confidentiality and non-competition terms of an
employment agreement with its employee. Id. at 30. The employer pleaded and
sought injunctive relief under common law requirements. However, on appeal, like
Norlyn, the employer argued for the first time that it was entitled to relief under the
Covenants Not to Compete Act. See id. at 35. The Dallas Court of Appeals rejected
the employer’s argument and held that, because it did not allege and submit the
statutory theory to the trial court, the employer did not preserve the argument for
review. Id. at 35.
          Importantly, Hilb predates the amendment to section 15.52 of the Act that
expressly provides that the enforceability of a covenant not to compete and the
procedures and remedies in an action to enforce a covenant not to compete are
exclusive and preempt any other criteria for enforceability of a covenant not to
compete under common law or otherwise. See Tex. Bus. & Com. Code Ann. §
15.52.
          Norlyn has preserved its challenge to the trial court’s ruling. 
Evidence of Irreparable Injury
          In point of error one, Norlyn argues the trial court erred in requiring evidence
of irreparable injury in enforcing non-competition clauses.
          The trial court denied Norlyn’s request for a temporary injunction because
Norlyn “failed to show both irreparable injury, and lack of an adequate remedy at
law.” As previously stated, a showing by Norlyn of an irreparable injury for which
it has no adequate legal remedy is not a prerequisite for obtaining injunctive relief
under the Covenants Not to Compete Act. Tex. Bus. & Com. Code Ann. §§ 15.50,
15.51(a). Therefore, the trial court abused its discretion when it misapplied the law
to the established facts of the case. See Baywood Country Club, 929 S.W.2d at 535. 
          We sustain point of error one.
Sufficiency of the Evidence and Abuse of Discretion
          In points of error two through five, Norlyn asserts the evidence was legally and
factually insufficient to support the trial court’s finding that: (1) the DSI Franchise
system of auto parts delivery was neither unique nor proprietary; (2) Norlyn failed to
show a substantial threat of irreparable injury and lack of an adequate remedy at law;
(3) Norlyn was not doing business in the Franchise Agreement territory and Norlyn
was required to present evidence that it was doing business in the exclusive Franchise
territory as a precondition for granting injunctive relief; (4) Robert Gol and Cliff
Jones were original investors and limited partners of a Texas partnership formed to
operate and own the first and only DSI Franchise in Arizona. In point of error six,
Norlyn contends there is no evidence to support the trial court’s finding that APDP
ceased using the DSI mark and name in the Franchise Agreement territory at the
request of Norlyn after April 5, 2002. In point of error seven, Norlyn argues the trial
court abused its discretion in denying Norlyn’s application for injunctive relief.
          Having concluded that the trial court abused its discretion when it misapplied
the law, we need not address these points of error.
Conclusion
          Without reaching the merits, we reverse the trial court’s order denying the
temporary injunction and remand the cause to the trial court for a new hearing in
conformance with the Covenants Not to Compete Act.
 
                                                                        Frank C. Price
                                                                        Justice

Panel consists of Justices Taft, Alcala, and Price.




Publish. Tex. R. App. P. 47.