McNEILUS COMPANIES, INC. and McNeilus Financial, Inc. d/b/a McNeilus Truck and Manufacturing Co., Appellants,

v.

George Preston SAMS, Appellee.

No. 05–97–00900–CV.

Court of Appeals of Texas, Dallas.

Oct. 16, 1997.

Alan Brandt Daughtry, David N. Kitner, Strasburger & Price, L.L.P., Kimberly Sumner Moore, Dallas, for Appellant.

Brett Lee Myers, Robert E. Luxen, Crouch & Hallett, L.L.P., Dallas, for Appellee.

Before LAGARDE, MORRIS and WRIGHT, JJ.

## OPINION

LAGARDE, Justice.

Pursuant to a contractual covenant not to compete, appellants McNeilus Companies, Inc. and McNeilus Financial, Inc. d/b/a

McNeilus Truck and Manufacturing Co.[1] seek to enjoin their former employee, appellee George Preston Sams, from working for a McNeilus competitor. Finding that the noncompetition agreement was unreasonably broad, the trial court denied McNeilus's application for a temporary injunction. This interlocutory appeal followed. McNeilus asserts two points of error. First, McNeilus contends that the trial court abused its discretion in denying the temporary injunction. Because the evidence of the reasonableness of the agreement was conflicting, we conclude the trial court did not abuse its discretion; consequently, we overrule point of error number one. In its second point of error, McNeilus contends that, having found the noncompetition agreement was unreasonably broad, the trial court abused its discretion in refusing to reform the agreement. Because we conclude that the statute authorizing interlocutory appeals does not encompass an appeal of a refusal to reform a noncompetition agreement, we dismiss point of error two for want of jurisdiction. Having found no merit in point of error number one, we affirm the trial court's order.

### Factual and Procedural Background

McNeilus manufactures and sells concrete mixers and refuse trucks and parts. In April 1996, McNeilus hired Sams for a sales position. When he was hired, Sams signed an employment agreement that included a noncompetition clause. The noncompetition clause provided that should Sams leave the employ of McNeilus, he would be prohibited during the next three years from working in any capacity for a McNeilus competitor within the states of Texas, Louisiana, Arkansas, and Oklahoma.[2] Sams voluntarily left the employ of McNeilus after working there less than eight months. A few months later, he went to work for Construction Equipment Parts Incorporated ("CEPI"), a direct competitor of McNeilus. When McNeilus learned that Sams was working for CEPI, it filed this lawsuit to enforce the covenant not to compete. After granting a temporary restraining order, the trial court conducted an evidentiary hearing on McNeilus's application for temporary injunction. Stan Roberts and Chris O'Neal, respectively the former and current local branch managers for McNeilus, and Sams testified at the evidentiary hearing.

Roberts testified about the two-tiered training procedures accorded new sales personnel at McNeilus. First, a new salesman is flown to the corporate office in Minnesota where McNeilus's factory is located and spends approximately two weeks on the assembly line there learning how McNeilus products are constructed. The new salesman then spends two weeks in the corporate sales office learning customer information and information about parts, including how to purchase parts and how McNeilus prices its parts, and general corporate strategy. McNeilus treats all information learned at the corporate training and orientation as a trade secret. We note that although Roberts was able to testify in general about the training that occurs in Minnesota, he could not testify about the specific training Sams received because he was not in Minnesota when Sams underwent training.

The second level of training is at the local branch where the employee will actually work. In Sams's case, the local branch was referred to as the Dallas office but was actually located in Hutchins. According to Roberts, at the training session in Hutchins, Sams learned the day-to-day operation of the office, and he was provided a list of all

---

1. Appellants will collectively be referred to as "McNeilus."

2. More specifically, the employment agreement provided that Sams:

will not engage or be interested directly or indirectly as employer, employee, principal, agent, financier, partner, stockholder, adviser, beneficiary, or otherwise in any capacity or relationship whatsoever, in the manufacturing, leasing, sales or distribution of any and all makes, models or types of motor vehicle concrete mixers, portable, stationary and central mixers of ready-mix plants, motor vehicle mounted refuse packing, transporting, or carrying bodies, refuse containers, or component parts of any of the foregoing, or in any business activities similar thereto, competitive with those of [McNeilus] for a period of three years from the date of said termination within the states [Texas, Louisiana, Arkansas, and Oklahoma].

McNeilus customers located in the territory served by the Dallas office, namely Texas, Louisiana, Arkansas, and Oklahoma.

Roberts testified that the majority of Sams's work as a salesman involved receiving incoming calls from customers seeking to order specific parts. Sams would also receive calls from customers who had problems with equipment and needed technical advice. When not receiving an incoming call, Sams made "cold calls" to McNeilus's customers soliciting business. Sams was also required to travel within the four-state territory to visit customers. Additionally, Sams participated in a weekly marketing strategy meeting where discussions were held about future plans to pursue customers.

O'Neal explained the need to enforce the noncompetition agreement. He testified that Sams received documents such as customer lists and price information that included the mark-up added by McNeilus. Armed with that information, a McNeilus competitor would know the identity of McNeilus's customers, the parts they needed, and where McNeilus obtained the parts. The competitor could then go to the same vendor, purchase the same parts, add a smaller mark-up, and offer to sell the parts to McNeilus's customer for a lower price.

O'Neal also testified that Sams's knowledge about the manufacturing process and the component parts of the cement mixers and other equipment would be valuable to competitors. Similarly, the information Sams learned in the weekly market strategy meetings was important trade information. If such information got out, according to O'Neal, a competitor would have knowledge of parts supplies, pricing information, and upcoming parts special promotions.

O'Neal also explained that the noncompetition agreement was limited to Texas, Oklahoma, Arkansas, and Louisiana because those are the states serviced by the Dallas office. Finally, O'Neal explained that the noncompetition provision lasts for three years because in that time period there are "enough changes in technology and improvements in mixers, and pricing changes due to inflation, that the trade secrets [an employ-

ee] may have learned up until that point would become obsolete."

Sams testified that shortly after he was hired he spent three weeks in Minnesota; however, he disputed that he was provided confidential information during that time. Instead, he testified that he "put trucks together. I mean, as far as how they were manufactured, the steel was there and we just put them together. I mean, that's all I did." Sams testified that while he was at McNeilus, no one ever told him that any category of information or documents was confidential or proprietary, or should not be disclosed to anyone outside the company. When Sams left McNeilus's employ, he did not take any documents, parts books, or manuals.

At McNeilus, Sams spent approximately sixty percent of his time taking incoming calls for replacement parts, approximately thirty percent of his time dealing with accounts receivable, and the remainder of his time making outgoing sales calls and dealing with inventory. At CEPI, Sams's duties primarily involved regenerating business from CEPI customers who had not purchased equipment in the last six months. To perform his duties at CEPI, Sams did not use any customer lists or pricing information that he obtained while employed at McNeilus. He did rely on his memory of the contents of the McNeilus parts book; however, according to Sams, the parts book was not a proprietary document but was instead made available to McNeilus customers upon request.

While at McNeilus, Sams sold parts to end users—that is, the people who actually owned or operated the trucks. He did not sell parts to wholesalers. At CEPI, Sams spent the majority of his time selling parts and equipment to wholesalers and resellers. While at CEPI, Sams never sold any parts to an end user that had been a customer of McNeilus but had not been a previous customer of CEPI.

After hearing the above evidence, the trial court denied McNeilus's application for a temporary injunction. In doing so, the trial court signed an order that stated the noncompetition agreement is "unreasonably

broad and imposes a greater restraint than is necessary to protect the business and goodwill of [McNeilus]." Thereafter, McNeilus filed a motion requesting the trial court reform the agreement. The trial court denied the motion to reform by written order.

### Applicable Law

■ The parties agree that the applicable law in this case is section 15.50 of the Texas Business and Commerce Code, which provides that a covenant not to compete is enforceable if it is:

> ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

TEX. BUS. & COM.CODE ANN. § 15.50 (Vernon Supp.1997). If, as McNeilus argues, the agreement is enforceable, then McNeilus was entitled to injunctive relief. *See* TEX. BUS. & COM.CODE ANN. § 15.51(c) (Vernon Supp. 1997).[3]

### Standard of Review

■ Appellate review of the grant or denial of a temporary injunction is strictly limited to a determination of whether the trial court clearly abused its discretion. *Davis v. Huey,* 571 S.W.2d 859, 861–62 (Tex.1978); *Recon Exploration, Inc.,* 798 S.W.2d at 851. An abuse of discretion does not exist when the trial court bases its decision on conflicting evidence. *Davis,* 571 S.W.2d at 862; *Recon Exploration,* 798 S.W.2d at 851. All reasonable inferences must be drawn in favor of the trial court's decision. *Tom James Co. v.*

*Mendrop,* 819 S.W.2d 251, 253 (Tex.App.—Fort Worth 1991, no writ).

### Discussion

The trial court concluded that the noncompetition agreement was unreasonably broad and imposed a greater restraint than necessary to protect McNeilus's business and goodwill. Thus, we infer that the trial court found at least one of the following was overbroad or an unreasonable restraint in light of the facts of this case: (1) the scope of the agreement, (2) the three-year time limitation, or (3) the four-state geographical restriction. On appeal, McNeilus submits that it undisputedly established the enforceability of the agreement. Concluding that the trial court heard conflicting evidence, we disagree.

### *Scope of the Agreement*

■ The agreement purported to prohibit Sams from working "in any capacity . . . whatsoever . . . in any business activities . . . competitive with those of [McNeilus]." Through Roberts and O'Shea, McNeilus presented testimony that (1) Sams was privy to trade, proprietary, and confidential information; (2) disclosure of that information to a competitor could harm McNeilus's business and goodwill; (3) CEPI is a direct competitor of McNeilus; (4) the time limitation was reasonable because the information would tend to be obsolete after three years; and (5) the four-state geographical limitation was reasonable because that is the territory covered by McNeilus's Dallas office. Sams, on the other hand, disputed the general assertion that he was privy to trade, proprietary, or confidential information. He testified that no one ever told him that there was any category of information or documents that should not be disclosed to anyone outside the

---

**3.** If an applicant relies on a statute that defines the requirements for injunctive relief, then the express statutory language supersedes common law requirements. *Reçon Exploration, Inc. v. Hodges,* 798 S.W.2d 848, 852 (Tex.App.—Dallas 1990, no writ). This Court has previously held that to assert a statutory right to injunctive relief for alleged violation of a noncompetition agreement, the former employer must have pleaded the applicability of the statute in the trial court. *Hilb, Rogal & Hamilton Co. v. Wurzman,* 861 S.W.2d 30, 34–35 (Tex.App.—Dallas 1993, no

writ). McNeilus's application for temporary injunction did not invoke the protections of section 15.50 but instead asserted that the common law of Minnesota governs the enforceability of the covenant not to compete. Although McNeilus now concedes that Texas law applies, it never amended its application to assert a statutory cause of action. Nevertheless, based on the agreement of the parties, we will assume *arguendo* that section 15.50 rather than the common law applies in this case.

company. As to the documents such as customer and price lists that Roberts and O'Shea identified as confidential, Sams testified that he did not use those documents or information during his tenure at CEPI, and he would have no opportunity to use such documents because at CEPI he sold to wholesalers and resellers rather than to end users. Sams testified that his duties at CEPI were such that purported confidential information that he obtained at McNeilus was of no use to him at CEPI.

Given Sams's testimony about the significant differences between his job at CEPI and his former job at McNeilus, and drawing all reasonable inferences in favor of the trial court's decision, we conclude that the trial court could have reasonably found that prohibiting Sams from working *in any capacity* for a McNeilus competitor was a restraint too broad in scope. *See, e.g., Recon Exploration,* 798 S.W.2d at 853 (noncompetition agreement that prohibited employment with "any business of the type and character engaged in and competitive with" the former employer presented question of reasonableness). Because we find that the trial court could have reasonably concluded that the agreement was overbroad we need not address issues regarding the three-year time and four-state geographical limitations. *See* TEX.R.APP. P. 47.1.

Accordingly, we overrule McNeilus's first point of error.

### Reformation

In alternative point of error number two, McNeilus asserts that, having found that the noncompetition agreement was unreasonable, the trial court erred in refusing to reform the agreement. Section 15.51(c) of the Texas Business and Commerce Code provides that, if the trial court finds the noncompetition agreement to be unreasonable and overbroad:

> the court shall reform the covenant to the extent necessary to cause the limitations in the covenant as to time, geographical area, and scope of activity to be restrained to be reasonable and to impose a restraint that is not greater than is necessary to protect the goodwill or other business interest of

the promisee and enforce the covenant as reformed....

TEX. BUS. & COM.CODE ANN. § 15.51(c) (Vernon Supp.1997).

■ This is an interlocutory appeal. As a general rule, appeals may be taken only from a final judgment. *Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 272 (Tex.1992); *Browne v. Bear Stearns & Co.,* 766 S.W.2d 823, 824 (Tex.App.—Dallas 1989, writ denied). Interlocutory orders are appealable only if specifically authorized by statute. *Tipps,* 842 S.W.2d at 272. The Texas Civil Practice and Remedies Code specifically provides that an appeal may be taken from an interlocutory order granting or refusing a temporary injunction. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014 (Vernon Supp.1997). Thus, only the trial court's decision to grant or refuse to grant a temporary injunction is subject to interlocutory appeal. We are not aware of any statutory provision authorizing an appeal from an interlocutory order denying a motion to reform a covenant not to compete. An appeal from an interlocutory order in an injunction case may not be used as a vehicle for appellate court review of other nonappealable interlocutory orders. *Browne,* 766 S.W.2d at 824. We hold that a trial court's refusal to reform the agreement is not appealable at this interlocutory stage; accordingly, McNeilus's second point of error is dismissed for want of jurisdiction.

### Conclusion

For the reasons set forth above, we affirm the trial court's order denying McNeilus's application for temporary injunction.