**NORLYN ENTERPRISES, INC., Appellant,**

v.

**APDP, INC., Appellee.**

No. 01–02–00473–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 12, 2002.

---

3. *See* Tex. Prop.Code Ann. §§ 111.001–115.017 (Vernon 1995 & Supp.2002).

Gail Schubot, Kevin H. George, George, Buchman & Leigh, Houston, TX, for Appellant.

Paul B. Rosen, Law Office of Paul B. Rosen, Bellaire, TX, Kelly Harvey, Rubal, Hamm & Harvey, Houston, TX, for Appellee.

Panel consists of Justices TAFT, ALCALA, and PRICE.*

## OPINION

FRANK C. PRICE, Justice (Assigned).

This is an accelerated interlocutory appeal[1] of the trial court's denial of Norlyn Enterprises, Inc.'s post-termination motion for temporary injunction seeking enforcement of a non-competition clause against APDP, Inc. We reverse and remand.

### Factual and Procedural Background

On April 26 and 30, 2002, the trial court conducted a hearing on Norlyn's motion for temporary injunction. The parties stipulated that the remedy sought in this post-termination motion was the enforcement of the non-compete clause preventing APDP from continuing to conduct its business in Arizona.[2] Robert Gol, president of APDP, and Larry Browne, president of Norlyn, were the only witnesses.

Gol testified that, in February 2000, he signed a Franchise Agreement making APDP the sole Arizona franchisee of DSI Franchising, Inc. (DSIF), the franchisor. As a franchisee, APDP paid royalties so it could use the DSI system developed by DSIF for marketing and providing automotive parts delivery services to automobile dealers and to manufacturers and wholesale distributors of automotive parts. The "system" included:

(a) the trademarks, trade names, service marks, logos, emblems, and indicia of origin, designated by DSIF in writing of use in connection with the System . . .; (b) confidential operating procedures, standards and specifications, and other intellectual property, including non-public trade secrets, proprietary information, and knowhow; (c) marketing programs and materials; and (d) training programs and materials.

(Section 1 of the Franchise Agreement.)

DSIF and the DSI system were acquired by Noble International, Ltd. in July 2000. At approximately the same time, Noble acquired ATD, a competitor of APDP. APDP sued Noble, alleging that Noble conspired to compete with APDP, one of its franchisees, by acquiring ATD, a competitor of APDP.[3] Gol testified that the parties entered into an agreed temporary restraining order wherein Noble agreed that ATD would not compete with APDP. While Gol conceded competition "is an inherent risk of business," he argued

---

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

1. See TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(4) (Vernon Supp.2002).

2. Section 13 of the Franchise Agreement, entitled "Restrictions on Competition," provides in pertinent part:

> 13.1 *Non–Competition.* During the term of this Agreement and for a period of 2 years following expiration or termination of this Agreement, you (including your owners) and your Managers and Assistant Managers will not directly or indirectly, perform any services for, engage in, acquire, advise, consult with, be an employee of or have any interest in, any business similar to the Franchised Business, or which offers services similar to the Franchised Services, unless you have DSIF's prior written consent.

3. *APDP, Inc. v. DSI Franchising Inc., et al.,* 234th District Court of Harris County, Texas, cause no. 2001–00771.

that the competition should not be coming from one's franchisor. Noble was acquired by Norlyn in February 2001, and on February 12, 2002, APDP sent Norlyn a notice of default in which APDP alleged, among other things, that Norlyn breached the Franchise Agreement by conspiring with Noble to compete in the franchised territory. The notice also indicated APDP was going to join Norlyn and Larry Browne in the suit still pending against Noble in the 234th District Court.

In March, Norlyn sent APDP a default notice alleging APDP was delinquent in its royalty payments, and, on March 19, Norlyn sued APDP for breach of contract. On April 1, 2002, APDP received a notice of termination from Norlyn terminating the franchise. On April 5, APDP filed its original answer, along with a counterclaim and application for temporary restraining order.

APDP's temporary restraining order was granted, and Norlyn was instructed not to contact or communicate with any officer, employee, agent, or customer of APDP and not to attempt to convert, use, or assume any of APDP's assets.

APDP created a d/b/a and began to work under the name "A–to–Z." Gol admitted that A–to–Z was essentially the same company as APDP, but it had a new telephone number and office location. APDP's customers signed new contracts with A–to–Z, and their service was uninterrupted. Gol testified that A–to–Z was not competing with DSI because, after APDP's franchise was terminated, there were no DSI franchises in Arizona.

Browne, Norlyn's president, testified that there are approximately 72 DSI franchises nationwide, and he was concerned that if A–to–Z was permitted to compete with DSI, then the franchise system would crumble. Despite the quantifiable nature of the royalty payments, Browne testified

he had not "added them up" to determine the amount of potential damages.

The trial court denied Norlyn's motion for temporary injunction and issued findings of fact and conclusions of law.

**Findings of Fact**

The trial court's findings of fact are as follows:

1. In February of 2000, APDP acquired DSI auto parts delivery service franchise for the territory of Phoenix, Mesa, and Tucson, Arizona (hereinafter referred to as the "DSI Franchise") and executed a franchise agreement by and between DSI Franchising, Inc. (DSIF) as franchisor and APDP as franchisee (the "Franchise Agreement"), said Franchise Agreement being the same agreement that is the subject of this lawsuit.

2. Robert Gol and Cliff Jones, the shareholders and officers of APDP, were original investors and limited partners of a Texas partnership that was formed to operate and own the first and only DSI Franchise in the state of Arizona that began doing business in the fall of 1999.

3. Prior to investing and operating the DSI Franchise, Gol, the president of APDP, had operated and managed a delivery service business for 12 years. Dennis Pennela, the current manager of the DSI Franchise, had approximately 25 years of experience in the delivery and trucking business prior to becoming manager of the DSI Franchise.

4. On or about July 25, 2000, Noble International, Ltd. acquired DSI and DSIF. Consequently, Noble became the Franchisor under the terms of the Franchise Agreement.

5. On or about February 28, 2001, Norlyn Enterprises, Inc. acquired all DSI and DSIF assets, including the Franchise Agreement, from Noble and be-

came the Franchisor under the terms of the Franchise Agreement.

6. On February 12, 2002, APDP sent a notice of default to Norlyn complaining of material breaches of the Franchise Agreement by Norlyn.

7. On April 5, 2002, APDP obtained a temporary restraining order prohibiting Norlyn and Larry Browne from contacting the employees, drivers, and customers of APDP. Subsequently, APDP ceased using the DSI mark and name in the Franchise Agreement territory at the request of Norlyn.

8. The DSI Franchise system of auto parts delivery services is neither unique nor proprietary.

9. Norlyn had not attempted to quantify its damages it claims it has allegedly suffered due to APDP's doing business in the Franchise Agreement territory as "A to Z."

10. Norlyn is not doing business in the Franchise Agreement territory (state of Arizona).

## Conclusions of Law

The trial court stated that it denied Norlyn's request for a temporary injunction because Norlyn "failed to show both irreparable injury, and lack of an adequate remedy at law for the following reasons:"

1. Norlyn presented no evidence that the DSI Franchise system for auto parts delivery services is neither unique nor proprietary. [sic] APDP's president and general manager received no special training or expertise from Norlyn. The DSI Franchise system for delivery of auto parts is therefore not a trade secret under Texas law and is not entitled to receive legal protection.

2. Norlyn failed to present any evidence that it cannot determine the monetary amount that it has been damaged by APDP's continuation of an auto parts delivery service in the Franchise Agreement territory and therefore has not shown why this injury cannot be measured and compensated in money damages.

3. Norlyn's assertion that other franchisees will breach their franchise agreements if the temporary injunction in this cause were denied is speculative and does not constitute evidence of irreparable harm.

4. Because Norlyn is not doing business in the Franchise Agreement territory (in the state of Arizona), it cannot establish that it is currently losing customers that it would otherwise have served, or employees that it would otherwise have employed, or that its goodwill and reputation are being damaged. To the extent that Norlyn maintains that, due to APDP's former association with Norlyn, APDP is succeeding in business in a manner that it would not otherwise have enjoyed, Norlyn has not shown why this injury cannot be measured and compensated in money damages. (*Snelling & Snelling, Inc. v. Ryvis, Inc.*, 1999 WL 1032799, 1999 U.S. Dist. LEXIS 17928 (N.D.Tex. Nov. 10, 1999).) The court finds that Norlyn cannot establish a substantial threat of irreparable injury in these circumstances.

Norlyn appeals from the denial of the temporary injunction.

## Standards of Review

### Temporary Injunction—Traditional

■ Traditionally, the sole issue before a trial court in a temporary injunction hearing is whether the applicant may preserve the status quo, pending trial on the merits. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex.1978); *T–N–T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 21 (Tex.App.-Houston [1st

Dist.] 1998, pet. dism'd). To be entitled to a temporary injunction, an applicant must plead a cause of action, show a probable right to recover on that cause of action, and show a probable injury in the interim. *Sun Oil Co. v. Whitaker*, 424 S.W.2d 216, 218 (Tex.1968); *T–N–T Motorsports,* 965 S.W.2d at 23. A probable right of success on the merits is shown by alleging a cause of action and presenting evidence that tends to sustain it. *T–N–T Motorsports,* 965 S.W.2d at 23–24. Probable injury includes elements of imminent harm, irreparable injury, and no adequate remedy at law for damages. *Id.* at 24.

■ Because an appeal of an order granting or denying a temporary injunction is an appeal from an interlocutory order, the merits of the applicant's case are not presented for appellate review. *Davis,* 571 S.W.2d at 861; *T–N–T Motorsports,* 965 S.W.2d at 21. Rather, the decision to grant or deny a temporary injunction lies within the sound discretion of the trial court, and we will not reverse that decision absent an abuse of discretion. *Walling v. Metcalfe,* 863 S.W.2d 56, 58 (Tex.1993); *City of Houston v. Todd,* 41 S.W.3d 289, 294 (Tex.App.-Houston [1st Dist.] 2000, pet. denied).

■ An abuse of discretion occurs if the trial court (1) acts arbitrarily and unreasonably, without reference to guiding rules or principles or (2) misapplies the law to the established facts of the case. *Baywood Country Club v. Estep,* 929 S.W.2d 532, 535 (Tex.App.-Houston [1st Dist.] 1996, writ denied). An abuse of discretion does not exist if the trial court heard conflicting evidence, and evidence appears in the record that reasonably supports the trial court's decision. *CRC–Evans Pipeline Int'l, Inc. v. Myers,* 927 S.W.2d 259, 262 (Tex.App.-Houston [1st Dist.] 1996, no writ). We may not substitute our judgment for that of the trial court. *Id.*

■ When, as here, specific findings of fact and conclusions of law are filed and a statement of facts is before the appellate court, the findings will be sustained if there is evidence to support them, and the appellate court will review the legal conclusions drawn from the facts found to determine their correctness. *Id.* at 263.

### Temporary Injunction—Covenants Not to Compete Act

The Covenants Not to Compete Act provides the criteria for enforceability of a covenant not to compete. Tex. Bus. & Com. Code Ann. § 15.50 (Vernon 2002); *Butler v. Arrow Mirror & Glass, Inc.,* 51 S.W.3d 787, 795 (Tex.App.-Houston [1st Dist.] 2001, no pet.). If the promisor breaches a covenant not to compete, section 15.51 of the Texas Business and Commerce Code provides that "a court may award the promisee under a covenant not to compete damages, injunctive relief, or both damages and injunctive relief for a breach by the promisor of the covenant." Tex. Bus. & Com.Code Ann. § 15.51(a) (Vernon Supp. 2002). Moreover, section 15.52, entitled "Preemption of Other Law," provides, "The criteria for enforceability of a covenant not to compete provided by section 15.50 of this code and the procedures and remedies in an action to enforce a covenant not to compete provided by Section 15.51 of this code are exclusive and preempt any other criteria for enforceability of a covenant not to compete or procedures and remedies in an action to enforce a covenant not to compete under common law or otherwise." Tex. Bus. & Com.Code Ann. § 15.52 (Vernon Supp.2002); *Butler,* 51 S.W.3d at 795. Thus, a showing by the promisee of an irreparable injury for which he has no adequate legal remedy is not a prerequisite for obtaining injunctive

relief under the Covenants Not to Compete Act. TEX. BUS. & COM.CODE ANN. §§ 15.50, 15.51(a); *Butler,* 51 S.W.3d at 795.

### Covenants Not to Compete Act

We apply the Covenants Not to Compete Act, which provides two criteria for the enforceability of a covenant not to compete. TEX. BUS. & COM.CODE ANN. § 15.50(a). The covenant must (1) be "ancillary to or part of an otherwise enforceable agreement" and (2) contain "limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." *Id.*

The Act expressly states that if the limitations as to time, geographical area, or scope of activity to be restrained are not reasonable or they impose a greater restraint than is necessary to protect the goodwill or other business interest of a promisee, "the court shall reform the covenant to the extent necessary to cause the limitations ... to be reasonable and to impose a restraint that is not greater than necessary" and "enforce the covenant as reformed...." TEX. BUS. & COM.CODE ANN. § 15.51(c) (Vernon Supp.2002).[4]

The Act further provides that sections 15.50 and 15.51 "are exclusive and preempt any other criteria for enforceability of a covenant not to compete...." TEX. BUS. & COM.CODE ANN. § 15.52. Thus, section 15.52 makes it clear that the legislature intended the Covenants Not to Compete Act "to largely supplant the Texas common law relating to enforcement of covenants not to compete." *Light v. Centel Cellular Co.,* 883 S.W.2d 642, 644 (Tex.

1994); *see also* TEX. BUS. & COM.CODE ANN. § 15.52.

### Waiver

◼ APDP argues Norlyn has waived the right to have its case reviewed pursuant to the Covenants Not to Compete Act because it failed to plead the Act or bring it to the attention of the trial court. To support its position, APDP refers us to *Hilb, Rogal & Hamilton Co. of Texas v. Wurzman,* 861 S.W.2d 30 (Tex.App.-Dallas 1993, no writ), in which an employer challenged an order of the district court denying a temporary injunction to enforce the confidentiality and non-competition terms of an employment agreement with its employee. *Id.* at 30. The employer pleaded and sought injunctive relief under common law requirements. However, on appeal, like Norlyn, the employer argued for the first time that it was entitled to relief under the Covenants Not to Compete Act. *See id.* at 35. The Dallas Court of Appeals rejected the employer's argument and held that, because it did not allege and submit the statutory theory to the trial court, the employer did not preserve the argument for review. *Id.* at 35.

Importantly, *Hilb* predates the amendment to section 15.52 of the Act that expressly provides that the enforceability of a covenant not to compete and the procedures and remedies in an action to enforce a covenant not to compete are exclusive and preempt any other criteria for enforceability of a covenant not to compete under common law or otherwise. *See* TEX. BUS. & COM.CODE ANN. § 15.52.

Norlyn has preserved its challenge to the trial court's ruling.

---

4. Before this section was amended in 1993, section 15.51 permitted the trial court to reform unreasonable limits within non-compete

covenants only at the request of the promisee. *See Gomez v. Zamora,* 814 S.W.2d 114, 119 (Tex.App.-Corpus Christi 1991, no writ).

### Evidence of Irreparable Injury

 In point of error one, Norlyn argues the trial court erred in requiring evidence of irreparable injury in enforcing non-competition clauses.

The trial court denied Norlyn's request for a temporary injunction because Norlyn "failed to show both irreparable injury, and lack of an adequate remedy at law." As previously stated, a showing by Norlyn of an irreparable injury for which it has no adequate legal remedy is not a prerequisite for obtaining injunctive relief under the Covenants Not to Compete Act. TEX. BUS. & COM.CODE ANN. §§ 15.50, 15.51(a). Therefore, the trial court abused its discretion when it misapplied the law to the established facts of the case. *See Baywood Country Club,* 929 S.W.2d at 535.

We sustain point of error one.

### Sufficiency of the Evidence and Abuse of Discretion

In points of error two through five, Norlyn asserts the evidence was legally and factually insufficient to support the trial court's finding that: (1) the DSI Franchise system of auto parts delivery was neither unique nor proprietary; (2) Norlyn failed to show a substantial threat of irreparable injury and lack of an adequate remedy at law; (3) Norlyn was not doing business in the Franchise Agreement territory and Norlyn was required to present evidence that it was doing business in the exclusive Franchise territory as a precondition for granting injunctive relief; (4) Robert Gol and Cliff Jones were original investors and limited partners of a Texas partnership formed to operate and own the first and only DSI Franchise in Arizona. In point of error six, Norlyn contends there is no evidence to support the trial court's finding that APDP ceased using the DSI mark and name in the Franchise Agreement territory at the request of Norlyn after April 5, 2002. In point of error seven, Norlyn argues the trial court abused its discretion in denying Norlyn's application for injunctive relief.

Having concluded that the trial court abused its discretion when it misapplied the law, we need not address these points of error.

### Conclusion

Without reaching the merits, we reverse the trial court's order denying the temporary injunction and remand the cause to the trial court for a new hearing in conformance with the Covenants Not to Compete Act.