Opinion issued April 3, 2003











In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00769-CV




CARDINAL HEALTH STAFFING NETWORK, INC., Appellant

V.

JAY BOWEN, Appellee




On Appeal from the 164th District Court
Harris County, Texas
Trial Court Cause No. 2002-11602




O P I N I O N

          Appellant, Cardinal Health Staffing Network, Inc. (“Cardinal”), appeals from
the denial of its application for a temporary injunction in its suit to enforce a non-competition covenant and for unfair competition and misappropriation of trade
secrets, among other things. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4)
(Vernon Supp. 2003). We determine (1) whether the trial court erred in implicitly
finding that Cardinal would not suffer irreparable injury pending trial and,
alternatively, (2) whether Cardinal had to show that it had an irreparable injury for
which it had no adequate legal remedy. We affirm.
Background
          Professional Health-Care Resources, Inc. (“PHR”) was in the interim-pharmacy-staffing business. PHR provided pharmacists and pharmacy technicians
to hospital and retail pharmacies on a temporary basis. The PHR employees who
filled vacancies for pharmacists and technicians at client pharmacies were called
“schedulers.” Appellee, Jay Bowen, started working with PHR as a temporary
pharmacy technician, but he became a PHR scheduler on January 30, 2000. 
          On his first day of work as a scheduler, Bowen signed PHR’s employment
agreement, which contained non-disclosure and non-competition covenants. The
non-competition covenant provided in pertinent part that if Bowen were to leave
PHR, he would not, directly or indirectly, (1) call on, solicit, or take away any of
PHR’s clients or prospective clients on whom he had called or with whom he had
became acquainted during his employment with PHR or (2) engage in, manage,
operate, join, control, or own an interest in any business that was competing with
PHR when he left PHR or that would come into “direct” competition with PHR
during the year after he left. The covenant precluded the defined competition
anywhere in Texas east of San Angelo for one year after Bowen left PHR, unless
PHR and its affiliates had ceased doing business in a particular city or county or in
the State.
          On November 15, 2001, Cardinal purchased all of PHR’s stock. Bowen did not
wish to work for Cardinal. Some time that same month, Bowen began discussing
employment opportunities with CompleteRx, a pharmacy-management company that
Bowen had serviced while working at PHR. CompleteRx offered Bowen a job at the
end of November 2001, and Bowen accepted it shortly thereafter. Bowen left
Cardinal on January 24, 2002. About the time that Bowan began work at
CompleteRx, that company started an interim-pharmacy-staffing business. Bowen
worked as a scheduler for CompleteRx. 
          The parties disputed whether the PHR non-competition covenant bound Bowen
or was valid, whether Bowen was violating that covenant by working for CompleteRx
as a scheduler, and whether Bowen was using any of Cardinal’s confidential
information at CompleteRx.



          Cardinal sued Bowen on March 5, 2002, claiming breach of the non-competition and non-disclosure covenants, tortious interference with Cardinal’s
business relations with its employees, theft of trade secrets, breach of the duty of
loyalty, fraud, and unfair competition and requested temporary and permanent
injunctive relief and actual and punitive damages. Bowen counterclaimed for, among
other things, a declaration that the non-competition covenant was void and for
damages for malicious prosecution and abuse of process. 
          The trial court heard Cardinal’s motion for temporary injunction on June 25,
2002. On July 3, 2002, the trial court denied Cardinal’s temporary-injunction motion
without stating reasons.
Cardinal’s Challenges
          In three issues, Cardinal argues that the trial court erred by not issuing a
temporary injunction to enforce the non-competition covenant and to restrain Bowen
either from working in the same field as Cardinal or from soliciting or doing business
with customers and clients with whom Bowen had worked at Cardinal.
 
Standard of Review
          We may not review the merits of the applicant’s case in an interlocutory appeal
from a temporary-injunction order. Tel. Equip. Network, Inc. v. TA/Westchase Place,
Ltd., 80 S.W.3d 601, 607 (Tex. App.—Houston [1st Dist.] 2002, no pet.). Whether
to grant or deny a temporary injunction lies within the trial court’s sound discretion. 
See Surko Enters., Inc. v. Borg-Warner Acceptance Corp., 782 S.W.2d 223, 224 (Tex.
App.—Houston [1st Dist.] 1989, no writ). “We view the evidence in the light most
favorable to the trial court’s order and indulge every reasonable inference in its
favor.” Amalgamated Acme Affiliates, Inc. v. Minton, 33 S.W.3d 387, 392 (Tex.
App.—Austin 2000, no pet.); accord Tel. Equip. Network, 80 S.W.3d at 607.
Rules Pertaining to Temporary Injunctions Generally
          Injunction proceedings are governed by Civil Practice and Remedies Code
chapter 65. See Tex. Civ. Prac. & Rem. Code Ann. §§ 65.001-65.045 (Vernon 1997
& Supp. 2003). Chapter 65 provides, in pertinent part, that “[t]he principles
governing courts of equity govern injunction proceedings if not in conflict with this
chapter or other law.” Id. § 65.001. The chapter further provides that a writ of
injunction may be granted if, among other grounds not applicable here, “the applicant
is entitled to a writ of injunction under the principles of equity and the statutes of this
state relating to injunctions.”


 Id. § 65.011(3). The Rules of Civil Procedure
similarly provide, “The principles, practice and procedure governing courts of equity
shall govern proceedings in injunctions when the same are not in conflict with these
rules or the provisions of the statutes.” Tex. R. Civ. P. 693. Therefore, the default
rule, created by chapter 65 and the rules of civil procedure, is that the rules of equity
control the granting of temporary-injunctive relief unless a particular statute provides
otherwise.
          “[T]he inadequacies of the remedy at law [are] both the foundation of and
conversely a limitation on equity jurisdiction.” Sisco v. Hereford, 694 S.W.2d 3, 7
(Tex. App.—San Antonio 1984, writ ref’d n.r.e.). Accordingly, when “an adequate
and complete remedy at law is provided, our courts, though clothed with equitable
jurisdiction, will not grant equitable relief.” Rogers v. Daniel Oil & Royalty Co., 110
S.W.2d 891, 894 (Tex. 1937). Equity thus requires a temporary-injunction applicant
to plead and prove not only (1) a cause of action and (2) a probable right to the relief
sought, but also (3) a probable, imminent, and irreparable injury in the interim. See
Butnaru v. Ford Motor Co., 84 S.W.3d 198, 204 (Tex. 2002). To establish an
irreparable injury, the applicant must show that it cannot be “adequately compensated
in damages or the damages cannot be measured by any certain pecuniary standard.” 
Id. That is, the applicant has to establish that there is no adequate remedy at law for
damages. See Surko Enters., 782 S.W.2d at 225. An adequate remedy at law is one
that is as complete, practical, and efficient to the prompt administration of justice as
is equitable relief. Id. The purpose of a temporary injunction is to preserve the status
quo of the litigation’s subject matter pending a trial on the merits. Butnaru, 84
S.W.3d at 204.
The Showing of Irreparable Injury

          Cardinal argues that the trial court abused its discretion in denying injunctive
relief because the evidence showed that Cardinal would necessarily suffer irreparable
injury for which it had no adequate legal remedy pending trial. We disagree. Much
of the evidence on which Cardinal relies is not viewed in the appropriate light,


 which
requires us to view the evidence in the light most favorable to the ruling and to
indulge all reasonable inferences in its favor. See Amalgamated Acme Affiliates, 33
S.W.3d at 392. Rather, when viewed in the required light, the evidence showed that
Cardinal’s sales doubled between the fourth quarter of 2001 and the first quarter of
2002. Cardinal was in fact using two to three more schedulers at the time of the
hearing than it had during the month that Bowen left Cardinal. CompleteRx and
Cardinal had in common only about 7% of Cardinal’s 150 pharmacists (about eight
or nine pharmacists) and only about 5.6% of Cardinal’s pharmacy technicians. 
Bowen did not solicit these pharmacists or technicians on behalf of CompleteRx;
rather, these individuals came to CompleteRx on their own. Additionally, it is
common in the industry for more than one interim-pharmacy-staffing company to
place a given pharmacist or technician. Finally, Cardinal’s general manager did not
know whether Cardinal had suffered any economic damages since Bowen had left.
          Given the above evidence, we hold that the trial court did not abuse its
discretion in implicitly finding that Cardinal would not suffer an irreparable injury
for which it had no adequate legal remedy pending trial.
          By post-submission letter, Cardinal claims that the trial court erred nonetheless
because a prima facie presumption of probable injury arose from Cardinal’s proof that
Bowen, whom Cardinal alleges was a highly trained employee, was breaching the
non-competition covenant. See Unitel Corp. v. Decker, 731 S.W.2d 636, 641 (Tex.
App.—Houston [14th Dist.] 1987, no writ); Martin v. Linen Sys. for Hosps., Inc., 671
S.W.2d 706, 709 (Tex. App.—Houston [1st Dist.] 1984, no writ); Hartwell’s Office
World, Inc. v. Systex Corp., 598 S.W.2d 636, 639 (Tex. Civ. App.—Houston [14th
Dist.] 1980, writ ref’d n.r.e.). Cardinal effectively argues that the trial court was
bound by this presumption.
          We disagree. When the cited courts speak of “prima facie proof,” they mean
a rebuttable presumption. See Decker, 731 S.W.2d at 639, 641 (relying on prima
facie proof to support holding that applicant had shown probable injury pending trial
and also noting that “it is undisputed” that defendants who were breaching covenant
were using experience acquired from applicant in direct competition with applicant);
Martin, 671 S.W.2d at 709-10 (after acknowledging that prima facie proof arose from
evidence of underlying breach, nonetheless evaluating both parties’ evidence relating
to irreparable injury); Hartwell’s Office World, 598 S.W.2d at 639 (relying on prima
facie proof, plus evidence that “show[ed] clearly” a fact supporting applicant, and
noting that defendants had not “rebutted this evidence”); see Reiter v. Coastal States
Gas Producing Co., 382 S.W.2d 243, 250 (Tex. 1964) (“Ordinarily a prima facie
inference or presumption may be rebutted . . . .”). Under these cases, proof that a
highly trained employee is continuing to breach a non-competition covenant gives
rise to a rebuttable presumption that the applicant is suffering irreparable injury.
          As discussed above, Bowen produced evidence that contradicted any
presumption that could have arisen from Cardinal’s proof. Therefore, even if
Cardinal was entitled to the presumption, the trial court was not bound by it.
The Requirement to Show Irreparable Injury
          In its brief and by post-submission letter, Cardinal alternatively argues that it
did not have to show irreparable injury for which it had no adequate legal remedy.
A.      Whether Cardinal Had to Show Irreparable Injury to the Extent that It
Sought the Temporary Injunction to Enforce the Non-Competition
Covenant

          Citing this Court’s opinion in Norlyn Enterprises, Inc. v. APDP, Inc., Cardinal
first argues that it did not need to prove irreparable injury to the extent that Cardinal
sought a temporary injunction to enforce the non-competition covenant. See id., 95
S.W.3d 578 (Tex. App.—Houston [1st Dist.] 2002, no pet.). 
          In Norlyn, this Court held that an applicant need not show an irreparable injury
for which he has no adequate legal remedy to be entitled to a temporary injunction in
a suit to enforce a non-competition covenant under the Covenants Not to Compete
Act (“the Act”).


 See id. at 583-84, 585.
          We have taken this occasion to review the correctness of our holding in Norlyn.
          Norlyn’s holding was based on (1) the language of the Act and (2) this Court’s
opinion in Butler v. Arrow Mirror & Glass, Inc., 51 S.W.3d 787, 795 (Tex.
App.—Houston [1st Dist.] 2001, no pet.). Norlyn, 95 S.W.3d at 583-84. We examine
whether the stated bases support Norlyn’s holding.
          1.       The Act

          In Norlyn, we relied upon the following provisions of the Act:
§ 15.51.Procedures and Remedies in Actions to Enforce
Covenants not to Compete
 
(a)Except as provided in Subsection (c) of this section, a court
may award the promisee under a covenant not to compete damages,
injunctive relief, or both damages and injunctive relief for a breach by
the promisor of the covenant.
Tex. Bus. & Com. Code Ann. § 15.51(a) (Vernon 2002).
§ 15.52.Preemption of Other Law
 
The criteria for enforceability of a covenant not to compete
provided by Section 15.50 of this code and the procedures and remedies
in an action to enforce a covenant not to compete provided by Section
15.51 of this code are exclusive and preempt any other criteria for
enforceability of a covenant not to compete or procedures and remedies
in an action to enforce a covenant not to compete under common law or
otherwise.

Id. § 15.52. Apparently assuming that the “injunctive relief” to which section
15.51(a) referred included temporary-injunctive relief, we held that section 15.51(a)
preempted the equitable rules otherwise applicable to temporary injunctions. See
Norlyn, 95 S.W.3d at 583-84.
          The Legislature added section 15.52 in 1993


 to clarify that it intended the Act
largely to preempt the common law relating to enforcement of non-competition
covenants. Light v. Centel Cellular Co. of Tex., 883 S.W.2d 642, 643 (Tex. 1994);
Butler, 51 S.W.3d at 792. However, the Act preempts only what it states that it
preempts. To determine what section 15.51(a) preempts, we must examine what it
purports to govern generally. If section 15.51(a) governs preliminary relief, then it
preempts the equitable rules applicable to preliminary relief, such as temporary
injunctions. If, in contrast, section 15.51(a) governs only final remedies, then it
preempts only those rules applicable to final remedies, but not those rules applicable
to preliminary relief, such as temporary injunctions. 
          Statutory interpretation is a question of law. In re Canales, 52 S.W.3d 698,
701 (Tex. 2001). Our primary goal is to ascertain and effectuate the Legislature’s
intent. Id. at 702. In doing so, we begin with the statute’s plain language because we
assume that the Legislature tried to say what it meant and, thus, that its words are the
surest guide to its intent. Fitzgerald v. Advanced Spine Fixation Sys., Inc., 996
S.W.2d 864, 865-66 (Tex. 1999). In ascertaining legislative intent, we do not confine
our review to isolated statutory words, phrases, or clauses, but we instead examine
the entire act. Meritor Auto., Inc. v. Ruan Leasing Co., 44 S.W.3d 86, 90 (Tex. 2001). 
We may also consider, among other things, the statute’s objectives; common law,
former law, and similar provisions; and the consequences of the statutory
construction. Tex. Gov’t Code Ann. § 311.023(1)-(7) (Vernon 1998); Canales, 52
S.W.3d at 702. We construe words according to their common usage, unless they
have acquired a technical or particular meaning. See Tex. Gov’t Code Ann. §
311.011(a), (b).
          Applying these rules, we conclude that the Legislature intended that section
15.51(a) govern only final remedies. Subsection (a) speaks of “award[ing]” the
promisee “damages” or injunctive relief “for a breach by the promisor.” Tex. Bus. &
Com. Code Ann. § 15.51(a). The terms “award” and “damages” generally describe
final remedies. See Black’s Law Dictionary 132, 393 (7th ed. 1999) (defining
“award” as “[a] final judgment or decision, [especially] one by an arbitrator or by a
jury assessing damages”; defining “damages” as “[m]oney claimed by, or ordered to
be paid to, a person as compensation for loss or injury”). The use within a sentence
of these relief-related terms, which concern final remedies, implies that the use in the
same sentence of another relief-related term (“injunction”) also concerns final relief.
          Our interpretation of subsection (a) is supported by the remaining provisions
of section 15.51, which also concern final remedies. See Meritor Auto., 44 S.W.3d
at 90 (instructing to consider entire act in construing part of act). For example,
subsection (b) assigns the burden of persuasion to a different party depending on
whether the ancillary agreement is for personal services. Tex. Bus. & Com. Code
Ann. § 15.51(b).


 Subsection (b)’s burden-shifting provisions make no sense in the
context of a temporary injunction, in which the applicant always has the burden to
show entitlement to the writ. See Butnaru, 84 S.W.3d at 204. Because we must
presume that the Legislature intended a reasonable result, we interpret subsection (b)
to apply only to final adjudications, not to the pursuit of preliminary relief. See Tex.
Gov’t Code Ann §§ 311.021(3), 311.023(5) (instructing that court may consider
consequences of statutory construction and should presume that reasonable result is
intended). Similarly, subsection (c) speaks of “reform[ing] the covenant” to make it
reasonable. Tex. Bus. & Com. Code Ann. § 15.51(c).


 Reformation is generally a
final remedy. More importantly, subsection (c) also provides that, after a trial court
reforms a non-competition covenant to make it reasonable, the court cannot then
award the promisor damages based on the promisee’s breach, but is limited to
enforcing the newly reformed covenant by injunction. Id. § 15.51(c). This language
clearly refers to a final remedy.
          Moreover, the Act’s overall purpose is to make non-competition covenants
enforceable when they meet certain criteria and to provide the means to enforce those
covenants. See id. § 15.50 (establishing criteria for non-competition covenant’s
enforceability); see also Philip J. Pfeiffer & W. Wendell Hall, Employment & Labor
Law, 44 SW. L.J. 81, 134 (1990).


 In contrast, the purpose of a temporary injunction
is not necessarily to enforce anything, but is instead to preserve the status quo and to
prevent probable, irreparable injury pending trial. See Butnaru, 84 S.W.3d at 204. 
Interpreting section 15.51(a) to govern only final remedies brings that section in line
with the Act’s overall purpose of enforcement.
          Accordingly, we hold that section 15.51(a) governs final remedies available
upon adjudication of the issues relating to a non-competition covenant’s enforcement. 
See id. § 15.51(a). Because section 15.51(a) does not govern preliminary relief, it
does not preempt the law that generally applies to preliminary relief, including the
equitable rules that apply to temporary injunctions. See Tex. Civ. Prac. & Rem.
Code Ann. §§ 65.001, 65.011(3); Tex. R. Civ. P. 693.
          2.       Butler v. Arrow Mirror & Glass Co. and Other Case Law

          We also relied in Norlyn on Butler v. Arrow Mirror & Glass Co., 51 S.W.3d
787 (Tex. App.—Houston [1st Dist.] 2001, no pet.). Norlyn, 95 S.W.3d at 583. The
Butler Court relied on sections 15.51(a) and 15.52 of the Act to hold that the Act
relieved the applicant seeking a permanent injunction from the burden of proving
irreparable injury for which it had no adequate legal remedy. Butler, 51 S.W.3d at
795. Butler’s holding is consistent with our interpretation of sections 15.51(a) and
15.52, but its holding does not support the holding in Norlyn, which concerned
temporary-injunctive relief. See & compare Norlyn, 95 S.W.3d at 585.
          One court of appeals has declined to follow Norlyn, instead applying equitable
temporary-injunction rules. See NMTC Corp. v. Conarroe, No. 09-02-499-CV, slip
op. at 4-7 (Tex. App.—Beaumont Feb. 27, 2003, no pet. h.). Other courts, both
before and after section 15.52 was added, have applied or mentioned the usual
equitable temporary-injunction rules even when the applicant’s suit sought to enforce
an agreement falling under the Act.



          In contrast, the Dallas Court of Appeals has held that section 15.51(a)
supersedes equitable temporary-injunction requirements, including the burden of
proving irreparable injury. See Hilb, Rogal & Hamilton Co. of Texas v. Wurzman,
861 S.W.2d 30, 33 (Tex. App.—Dallas 1993, no writ); Recon Exploration, Inc. v.
Hodges, 798 S.W.2d 848, 851-53 (Tex. App.—Dallas 1990, no writ); see also
McNeilus Cos. v. Sams, 971 S.W.2d 507, 510, 510 n.3 (Tex. App.—Dallas 1997, no
pet.) (merely recognizing Recon’s rule).
          We respectfully disagree with the holdings of the Dallas Court of Appeals in
the context of temporary-injunctive relief. First, we do not believe that the
Legislature intended section 15.51(a) to supersede the law relating to preliminary
relief. Second, we do not believe that the case law on which the Dallas court relied
supports its holding. That line of case law provides that, when a statute defines the
requirements for injunctive relief, the statutory requirements for obtaining that relief
supersede equity and the common law. See Hilb, Rogal & Hamilton, 861 S.W.2d at
33; Recon Exploration, 798 S.W.2d at 852 (both citing Tex. Farm Bureau Cotton
Ass’n v. Stovall, 253 S.W. 1101, 1108 (Tex. 1923) and Rio Grande Oil Co. v. State,
539 S.W.2d 917 (Tex. Civ. App.—Houston [1st Dist.] 1976, writ ref’d n.r.e.)). We
agree with this line of authority, but, because we have already concluded that section
15.51(a) does not govern preliminary relief, we disagree that this line of authority
controls here. Moreover, we note that, in virtually every temporary-injunction case
that we have found falling within the line of authority on which the Dallas court
relied, (1) the statute contained language expressly governing or language broad
enough to govern preliminary injunctive relief


 or (2) the temporary injunction was
issued to stop the opponent from violating a law, which order—whether the courts
expressly stated it or not—was appropriate for the separate reason that trial courts
have a duty to restrain violations of the law when shown.


 See, e.g., Houston
Compressed Steel Corp. v. State, 456 S.W.2d 768, 775 (Tex. Civ. App.—Houston
[1st Dist.] 1970, no writ) (“[W]hen it is determined that the law is being violated it
is the province and the duty of the court to restrain it.”). Section 15.51(a) does not
fit into either of these categories.
          3.       Conclusion
          We hold that the Act does not preempt the equitable principles, including the
need to show irreparable injury for which legal remedy is inadequate, for obtaining
temporary-injunctive relief. We overrule Norlyn to the extent that it holds otherwise.
B.      Whether Cardinal Had to Show Irreparable Injury to the Extent that It
Sought the Temporary Injunction to Protect Trade Secrets

          In its brief and by post-submission letter, Cardinal next argues that, to the
extent that it sought a temporary injunction in support of its common-law claims for
unfair competition and misappropriation of trade secrets, the “inevitable disclosure”
doctrine


 effectively relieved Cardinal of having to show irreparable injury for which
it had no adequate legal remedy. That is, Cardinal essentially urges us to recognize
the doctrine, argues that it showed that it was entitled to invoke the doctrine, contends
that the doctrine presumes irreparable injury, and claims that the trial court erred as
a matter of law when it denied an injunction in the face of proof that the doctrine
applied.
          We have found no Texas case expressly adopting the inevitable disclosure
doctrine, and it is unclear to what extent Texas courts might adopt it or might view
it as relieving an injunction applicant of showing irreparable injury. See Conley v.
DSC Communications Corp., No. 05-98-01051-CV, 1999 WL 89955, at *3 (Tex.
App.—Dallas Feb. 24, 1999, no pet.) (not designated for publication) (finding no
Texas case referring to doctrine of inevitable disclosure, but adopting test with similar
attributes); Martin, supra note 12, at 1376-79, 1382-87 (questioning whether doctrine
is compatible with Texas trade-secret law). However, the Dallas Court of Appeals
has adopted what might be viewed as a modified version of the doctrine, holding that
enjoining an employee from using an employer’s confidential
information is appropriate when it is probable that the former employee
will use the confidential information for his benefit (or his new
employer’s benefit) or to the detriment of his former employer.

Conley, 1999 WL 89955, at *4 (emphasis in original); see Rugen v. Interactive Bus.
Sys., Inc., 864 S.W.2d 548, 552 (Tex. App.—Dallas 1993, no writ) (“Rugen is in
possession of IBS’s confidential information and is in a position to use it. Under
these circumstances, it is probable that Rugen will use the information for her benefit
and to the detriment of IBS.”); Williams v. Compressor Eng’g Corp., 704 S.W.2d
469, 470-72 (Tex. App—Houston [14th Dist.] 1986, writ ref’d n.r.e.) (noting that jury
found that trade secrets “probably would” be disclosed and holding that proof that
trade secrets “will be used” by former employee to compete supports injunctive
relief). Cardinal in essence asks us to adopt the doctrine as stated in Conley and
Rugen (and other cases that it claims hold similarly) and to hold that the trial court
abused its discretion as a matter of law in declining to enjoin Bowen under the
doctrine.
          We decline Cardinal’s request. We need not decide whether to adopt the
doctrine as stated in Conley and Rugen because, even if we were to adopt it, Bowen
produced evidence that would defeat the doctrine’s application here. For example,
Bowen’s evidence showed that Bowen did not take any confidential materials with
him when he left Cardinal; that CompleteRx and Cardinal had in common only the
few pharmacists and technicians noted above; that Bowen did not solicit any of these
individuals; that some of CompleteRx’s interim-pharmacy-staffing customers were
those hospitals with which CompleteRx already had on-going relationships to provide
pharmacy-management services; that CompleteRx had devised a business plan for its
own interim-pharmacy-staffing business over a year before Bowen came aboard and
that CompleteRx would have started this business with or without Bowen; that, as
Bowen testified, CompleteRx’s management “did not think that we needed any of
[Cardinal’s confidential information]. We had information in-house and we had our
own business plan and our own directions that we wanted to go in.”; and that Bowen
would not need to use Cardinal’s confidential information to perform as
CompleteRx’s scheduler because the information that he needed to develop business
contacts was available publicly. This evidence raises a reasonable inference that
Bowen did not need to and would not use Cardinal’s confidential information, i.e.,
that disclosure and use was not probable. See Conley, 1999 WL 89955, at *4; Rugen,
864 S.W.2d at 552. 
          Accordingly, Cardinal has not demonstrated that the Conley and Rugen
doctrine, were we to adopt it, would require the trial court to enjoin Bowen
temporarily.
Conclusion
          The trial court’s order can be sustained on the implicit finding that Cardinal
had an adequate legal remedy. See Butnaru, 84 S.W.3d at 204 (requiring that
temporary injunction applicant plead and prove cause of action, probable right to
relief, and probable, imminent, and irreparable injury in interim). Accordingly, we
need not address Cardinal’s remaining arguments, and we overrule all of Cardinal’s
issues.

          We affirm the trial court’s order denying the temporary injunction.

 
Tim Taft
Justice

Panel consists of Justices Taft, Keyes, and Alcala.

A majority of the Justices of the Court voted to consider the cause en banc. See Tex.
R. App. P. 41.2(c).

The en banc Court consists of Chief Justice Radack and Justices Hedges, Taft,
Nuchia, Jennings, Keyes, Alcala, and Hanks.

Justice Higley, not participating.